**JAW LEGAL**
Jared A. Washkowitz (7653)
1050 Bishop Street #450
Honolulu, HI 96813
Telephone: (808) 840-7410
Facsimile: (415) 520-9729
Email: jwash@jawlegal.com

Attorney for Plaintiffs
DAVID DEMAREST and
GREEN MOUNTAIN MYCOSYSTEMS LLC

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> RAIED J. ALFOUADI; UNNAMED SAILING VESSEL in rem, Hull No. HA 6874 H; DOE DEFENDANTS 1-20, DOE CORPORATIONS, 1-20, DOE GOVERNMENT AGENCIES 1-20, DOE PARTNERSHIPS 1-20, <br><br> Defendants. | Case No.: 22-CV-00064 JAO KJM <br><br> **PLAINTIFFS DAVID DEMARESET AND GREEN MOUNTAIN MYCOSYSTMES LLC's OBJECTIONS AND COUNTER-DESIGNATIONS TO DEFENDANT RAIED J. ALFOUADI'S DESIGNATION OF THE DEPOSITION OF JEFFREY PRATT TAKEN ON MARCH 14, 2024; EXHIBIT "A"** <br><br> Judge: Hon. Jill A. Otake <br><br> Trial Date: August 19, 2024 |

**PLAINTIFFS DAVID DEMARESET AND GREEN MOUNTAIN
MYCOSYSTMES LLC's OBJECTIONS AND COUNTER-
DESIGNTATIONSTO DEFENDANT RAIED J. ALFOUADI'S**

-1-

## DESIGNATION OF THE DEPOSITION OF JEFFREY PRATT TAKEN ON MARCH 14, 2024

Plaintiffs DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC  (herein "Plaintiffs") by and through their undersignd counsel and pursuant to the applicable Federal Rules of Civil Procedure, Local Rules, and Third Amended Scheduling Order hereby file their Objections and Counter-Designations to Defendants' Designation of the Deposition Excerpts of Jeffrey Pratt taken on March 14, 2024 as follows:

Plaintiffs object to the use of the deposition transcript of Mr. Pratt at trial other than for impeachment based on Fed.R.Civ.P. 32, which states that all of the following conditions must be met:

(A) the party was present or represented at the taking of the deposition or had reasonable notice of it;

(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C) the use is allowed by Rule 32(a)(2) through (8).

See Fed.R.Civ.P. 32(a)(1).

The uses allowed under Rule 32(a)(2) through (8) include using the deposition for impeachment, or if the deposition is of a party or a 30(b)(6) designee of a party, or

if the witness is unavailable, which is defined as if the witness is dead, more than 100 miles from the place of trial, unable to testify due to age, infirmity, illness or imprisonment, or if the witness's attendance could not be compelled by subpoena. See Fed.R.Civ.P. 32(a)(4).

Here, the deposition transcript of Mr. Pratt can only be used for impeachment because Mr. Pratt is not a party, and because Defendant has not established that he is unavailable per Rule 32(a)(4).  Therefore Plaintiffs object to all of Defendant's designated exceprts and to the use of any portion of Mr. Pratt's deposition transcript at trial other than for impeachment purposes.

In an abundance of caution, and to the extent the Court is inclined to allow the use of Mr. Pratt's deposition transcript over Plaintiffs' objection, Plaintiffs object to the following excerpts.

- p.. 48, 6:9- lack of foundation

In an abundance of caution, and to the extent the Court is inclined to allow the use of Mr. Pratt's deposition transcript over Plaintiffs' objection, Plaintiffs identify the following counter-designations, which are attached hereto as Exhibit "A".

- p. 62:14-25

- p. 63:1-25

- p. 64:1-25

- p. 65:1-10; 17-25

- p. 66:1-25

- p. 67:1-25

- p: 68:1-3; 8-16

- p. 69:22-25

- p. 70:1-25

- p:71:1-11

- p72:3-23

- p:73:21-24

- Exhibit H

DATED:     Honolulu, Hawaii   August 5, 2024

    /s/Jared A. Washkowitz
JARED A. WASHKOWITZ
Attorneys for Plaintiffs
DAVID DEMAREST and GREEN MOUNTAIN
MYCOSYSTEMS LLC

# EXHIBIT A

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3                        ---:---

 4   DAVID DEMAREST and GREEN     ) Case No.
     MOUNTAIN MYCOSYSTEMS, LLC,   ) 22-CV-00064-JAO-KJM
 5                                ) (In Admiralty)
               Plaintiffs,        )
 6                                )
          vs.                     )
 7                                )
     RAIED J. ALFOUADI; UNNAMED   )
 8   SAILING VESSEL in rem Huyll  )
     No. HA 6874 H; DOE           )
 9   DEFENDANTS 1-20; DOE         )
     CORPORATIONS 1-20; DOE       )
10   GOVERNMENT AGENCIES 1-20;    )
     DOE PARTNERSHIPS 1-20,       )
11                                )
               Defendants.        )
12   _____)

13

14              VIDEO CONFERENCE DEPOSITION OF

15                      JEFFREY PRATT

16   Taken remotely by the court reporter with Zoom Video

17   Conferencing, on behalf of Defendant Raied J.

18   Alfouadi, the deponent appearing from Ralph Rosenberg

19   Court Reporters, Inc., Maui Conference Room, 2233

20   West Vineyard Street, Suite A, Wailuku, Hawaii 96793,

21   commencing at 1:00 p.m. on March 14, 2024 pursuant to

22   Notice.

23

24

25   Before:   WILLIAM T. BARTON, RPR, CSR NO. 391
```

2

```
 1  APPEARANCES:

 2      For Plaintiffs
        David Demarest and
 3      Green Mountain Mycosystems, LLC
            JARED A. WASHKOWITZ, ESQ.
 4          (appearing by video conference)
            1050 Bishop Street, Suite 450
 5          Honolulu, Hawaii 96813
            (808) 840-7410
 6          jw102475@gmail.com

 7      For Defendant
        Raied J. Alfouadi
 8          JAMES V. MYHRE, ESQ.
            Myhre & Storm, AAL, ALC
 9          1003 Bishop Street, Suite 1290
            Honolulu, HI 96813
10          (808) 524-2466
            jmyhre@mtmhawaiilaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

62

1      Q.   What's that?

2      A.   Not in the very beginning, no.

3      Q.   I recall, and correct me if I'm wrong, but I

4  think you testified he brought it up towards the end

5  of the whole operation that's when you first heard

6  the word salvage.  Is that what you said?

7      A.   Probably something like that, yeah.

8      Q.   And then you also said that you weren't, you

9  don't consider yourself having done any work for

10 Mr. Demarest or his company, correct?

11     A.   I didn't even know he had companies.  I

12 mean, as far as I know he doesn't even work, you

13 know.

14     Q.   I'm going to share the screen with you.  One

15 second.  Let's see if I can do this.

16          (Screensharing a document.)

17          (Whereupon, a Text messages screenshot was

18 marked as Plaintiff's Exhibit 1 for

19 Identification.)

20     Q.   Can you see my screenshare right here?

21     A.   Yes.

22     Q.   Yes?  Can you see that?

23     A.   Yeah.

24     Q.   And first question and I am going to attach

25 this as an exhibit.  It will be Plaintiff's

63

1   Exhibit 1.

2           And I can send the court reporter a copy of

3   this after the depo.  I'll send it by email.  You as

4   well, Jim.

5           First of all, whose number is (415)810-8346?

6       A.   Me.

7       Q.   You see this date, January 4, 2022?

8       A.   Yes.

9       Q.   Is this a communication between you and

10  Mr. Demarest?

11      A.   I don't know.  I'm going to read it and see.

12  Dust extraction.  He was a nut for that stuff.

13      Q.   I'm sorry, say that again?

14      A.   He was a nut for dust extraction.  You're

15  cutting up a boat on the rocks.  It was pretty

16  funny --

17      Q.   For right now my question is, this is a text

18  exchange between yourself and Mr. Demarest, correct?

19      A.   Yes.  That's what it looks like.

20      Q.   And do you dispute that this text exchange

21  occurred January 4, 2022?

22      A.   That's what it says right there.

23      Q.   In this part right here, I don't know if you

24  can see my cursor where I'm highlighting?

25      A.   I can see that.  "Jeffrey C. Pratt.  Thanks

64

1  for giving me the opportunity to help salvage this

2  boat with you.  Thanks Jeff."

3       Q.   Is that --

4       A.   What the hell does that mean?

5       Q.   Well, that's what I'm asking you.  Did you

6  send that text?

7       A.   It looks like it on your screen.  But I

8  don't remember sending that text.  It doesn't make

9  any sense.  Good afternoon, gentlemen we are out on

10  the pier about 15 minutes ago and the keel is

11  definitely -- I don't know.  I don't remember any of

12  that.

13       Q.   But you see where it says this text

14  starts --

15       A.   I see that.  I don't understand that.

16       Q.   This is your number, right 415 --

17       A.   Yes.

18       Q.   It looks --

19       A.   Why would I write something that doesn't

20  make any sentence, "Jeffrey C. Pratt.  Thanks for

21  giving me the opportunity to help salvage this boat

22  with you.  Thanks Jeff."

23            What the heck does that mean?

24            MR. MYHRE:  I'm going to object to the

25  question as it's assuming who wrote that.

65

```
 1        Q.   Let me ask you this.  Are you denying that
 2   you wrote this text, Mr. Pratt?
 3        A.   I'm not going to deny anything.  But I'm not
 4   going to go along with necessarily either.  That
 5   doesn't make any sense.  I would never write
 6   something like that.
 7        Q.   Why not?  What part of it would you not
 8   write?
 9        A.   Why would somebody write, Jeffrey C. Pratt
10   thanks for giving me the opportunity to help salvage
11   this boat with you.  Thanks Jeff?  I don't get it.
12        MR. MYHRE:  A fair reading -- object to the
13   question as being vague and ambiguous.  The document
14   speaks for itself.  And any fair reading of that
15   would indicate that that's not this witness who is
16   saying that.  But go ahead.
17        A.   The bottom of the boat without the keel?
18   "Keel is definitely on the bottom without the boat.
19   Thanks Jeff."
20             I don't know.  I wouldn't have written stuff
21   like that.
22        Q.   Are you denying that you wrote these two
23   text messages?
24        A.   Here.  Let me look.  I'm going to look on my
25   own phone.  I haven't texted David in fricken a long
```

66

1  time.  Let's see.

2      Q.   Okay.

3          (Pause.)

4      A.   What was the date on that?  January 4th.  He

5  writes way too much.

6          MR. WASHKOWITZ:  I move to strike any

7  nonresponsive portion of the answer.

8      Q.   Mr. Pratt, I know you're checking your text

9  right now.  Can you just check your phone and let me

10  know if you sent a text on January 4, 2022?

11      A.   I'm working on it.  I'm back to January.

12      Q.   Keep in mind the court reporter has to write

13  down everything we say.  So all the side commentary I

14  am going to move to strike just so it's not on the

15  transcript.  Nothing personal.

16      A.   I see the same thing on my phone as on your

17  screen.  Doesn't make any sense at all.

18      Q.   So my next question is, you earlier

19  testified that you didn't hear the word salvage until

20  towards the end of the operation.  But would you

21  agree that January 4, 2022 that was the second day of

22  the salvage wasn't it?

23          MR. MYHRE:  Objection.  Misstates the

24  evidence.

25      A.   It's the third day.

1    Q.   It was the third day, okay.  So January 4th

2    was the third day of the salvage, correct?

3    A.   Yes.

4    Q.   And I think you had also -- can you guys

5    still see that same screen?

6    A.   I can see the same screen.

7    Q.   Okay.  I'm going to get back to it.  Hold on

8    one second.

9         (Pause.)

10    Q.   So this text also says, I'm just going to

11    read it, it says, "Thanks for giving me the

12    opportunity to help salvage this boat with you."

13         But you testified earlier?

14    A.   I must have been doing that when he was

15    saying the things he was going after the insurance

16    company or something.

17    Q.   Right.  But you said earlier that in your

18    mind you didn't work for Mr. Demarest or his company.

19    A.   I never did work for him.

20    Q.   We have a text here that says, "Thanks for

21    giving me the opportunity to help salvage this boat

22    with you."

23         In your mind, does that indicate that

24    Mr. Demarest asked if you could help with the boat

25    and you specifically helped salvage?

68

```
 1        A.   No, I was just saying I was working with him
 2   to salvage the boat.  It had nothing to do with the
 3   company or compensation or nothing.
 4        MR. MYHRE:  I'm also going to object to the
 5   question as it's taking what's stated there out of
 6   context as to who is saying what.
 7             (Screensharing ended.)
 8        Q.   And you don't deny, Mr. Pratt, that you did
 9   work on the vessel per Exhibit H, which is your
10   estimate of the time you spent with this operation,
11   correct?
12        A.   Yes.  We, everybody was just getting the
13   boat out of the water.  Called salvage.  Had nothing
14   to do with the company.  Had nothing to do with
15   anything.  That's just what it is.  You're removing a
16   vessel from the water.  It's called salvage.
17        MR. WASHKOWITZ:  I'm going to, this is for
18   the record, just for the record, Mr. Pratt.  You
19   don't have to respond to this.
20             I'm going to move to strike the testimony
21   regarding what constitutes a salvage and what
22   doesn't.
23        Q.   Okay.  There were some questions asked
24   earlier about the interrogatory responses.  And
25   specifically counsel asked, read off the
```

1  interrogatory response where Mr. Demarest said that

2  Mr. Alfouadi and Jeff Pratt came to Lahaina Welding

3  and asked Mr. Demarest to come quickly because Mr.

4  Alfouadi's vessel was aground.

5          And if you remember you said that's not how

6  you remember it, correct?  You don't remember

7  going --

8      A.  Yes.

9      Q.  Sorry, go ahead.

10     A.  No.  I don't remember going with Raied to go

11 and talk to Dave or get David involved.

12     Q.  What is your recollection of how Dave came

13 to be involved?

14     A.  Oh, I'm sure we were going back and forth

15 getting ropes and doing whatever we could get to get

16 the boat on.  I'll sure Dave was asking what's going

17 on.  Everybody knows everybody in there.

18     Q.  When you say back and forth to get ropes,

19 going back and forth between the shop at Lahaina

20 Welding?

21     A.  Yes.  Yes.

22     Q.  You observed Mr. Demarest working on the

23 operation as well, right, while you were there?

24     A.  Yes.

25     Q.  Going back to Exhibit H.  You had listed all

70

1   the times and dates to, you know, to the best of your

2   recollection that you helped out with this operation.

3        A.   Uh-huh (affirmative).

4        Q.   Do you recall on any of those times and

5   dates Mr. Demarest not being there?

6        A.   Like I said, I don't think he was there on

7   the first day.  It was in the afternoon if I recall.

8   Exactly 2:45 p.m.  I don't remember him being there

9   on the first day.  It was just me and Raied, and then

10  my family.

11           Like I said, we were all in the water and,

12  you know, trying to grab all the debris we could

13  grab.  Like it says for the second day, beach cleanup

14  and boat.  That's probably when Dave was started to

15  show up.  But I don't recall definitely on the first

16  day.

17       Q.   And then the question regarding removal of

18  the mast from the vessel.

19           Is your testimony that Mr. Demarest did not

20  help with that?

21       A.   He might have helped on the second day with

22  part of it and carrying it down the thing.  But we

23  got my grinder, we cut it up, the cables were still

24  attached.  There was going to be, you know, we were

25  looking for bolt cutters to cut the cables because

71

```
1   they're stainless steel cables.
2            It was just keep things from banging around.
3   I don't remember Dave being there for that
4   personally, no.
5       Q.   And you never witnessed Mr. Alfouadi telling
6   Mr. Demarest to stand down and to not help with the
7   operation, correct?
8       A.   No.  No.  Everybody was just pitching in,
9   helping out.  Doing whatever we needed or could do.
10  It's like a slow train wreck when a boat comes
11  aground.
12      Q.   Right.  What about -- you good?
13      A.   Yeah, I just got a cramp in my leg.
14      Q.   You need a break?
15      A.   No.  I'll just walk on it for a second.  I'm
16  fine, I can hear you.
17      Q.   Do you have any knowledge as to what exactly
18  was saved as far as from the vessel goes?  Was any
19  part of it actually saved from the water?
20      A.   There wasn't much to be saved.  I cut up, I
21  had the portholes.  Just that I used them as art on
22  my wall in my house, put pictures in them, you know.
23  They were all patinaed, all nice and green and
24  oceany.  And I salvaged the steering wheel off the
25  boat.
```

72

1        That's all gone now.  It all burned up in

2   the fire.  But nothing would be good I don't think.

3        Q.   Do you know if Mr. Alfouadi's boat was on a

4   mooring when it broke loose, or was it anchored?

5        A.   It was on a mooring supposedly that I know

6   of.

7        Q.   How do you know that?

8        A.   Because I bought his mooring.  I bought

9   Raied's and Raied put his on another one that he had.

10  That's what I was told.  It wasn't as sufficient as

11  the mooring, mine is two great big concrete blocks

12  chained together and composite mooring.

13        And Raied was, supposedly at that time he

14  was going to be leaving that's why he was selling the

15  mooring.  He was going to get in his sailboat, that's

16  why he had all this stuff in the sailboat.  Turns out

17  probably too much stuff in the sailboat.

18        But because the amount of debris that came

19  out of that thing.  But he was going to sail to Oahu

20  or something, I guess, and be gone.  And within a few

21  weeks big storm came in out of the west that day.

22  And that solved that problem because his boat broke

23  off and that was it.

24        Q.   How certain are you that his boat was moored

25  as opposed to anchored?  Is that something you

73

1  witness or you heard someone told you?

2      A.  You would have to -- that's just my

3  recollection.  Because that -- they were talking, he

4  was talking at some point about that it was just, it

5  was a smaller block.

6          So my recollection, I don't know for sure I

7  never dived it.  I never stopped, got on his vessel,

8  so I really have no idea.  I bought his, the really

9  good mooring that he had, you know, prior to, prior

10 to the incident.  This thing was only a few weeks

11 prior.  Then his boat came ashore.

12     Q.  Okay.  And then is it true that during this

13 operation you and Mr. Demarest were exchanging text

14 messages during this whole process, correct?

15     A.  He's a text messager.  He texts so much.

16 You can tell.  If you look at his texting between me

17 and him they are freaking 500 words long, all of this

18 crazy crap in there.  Yeah.

19          MR. WASHKOWITZ:  I'm going to move to strike

20 that response.

21     Q.  I'm just going to ask you.  Is it true, yes

22 or no, that you guys texted during this operation?  I

23 think the answer is yes, right?

24     A.  Yes.

25     Q.  Okay.

76

1                   C E R T I F I C A T E

2        I, WILLIAM T. BARTON, Certified Shorthand
   Reporter, do hereby certify:
3
   That on March 14, 2024 at 1:00 p.m. there appeared
4  before me JEFFREY PRATT, the deponent whose
   deposition is contained herein; that prior to being
5  examined was first by me duly sworn;

6  That the deposition was taken down by me in machine
   shorthand and was thereafter reduced to typewriting;
7  that the foregoing represents, to the best of my
   ability, a true and correct transcript of the
8  deposition in the foregoing matter.

9  That pursuant to Rule 30(e) of the Hawaii Rules of
   Civil Procedure, a request for an opportunity to
10 review and make changes to this transcript:

11 _____Was made by the deponent or a party (and/or
   their attorney) prior to the completion of the
12 deposition.
   _____Was not made by the deponent or a party
13 (and/or their attorney) prior to the completion of
   the deposition.
14 ___X__Was waived.

15 I further certify that I am not an attorney for any
   of the parties hereto, nor in any way concerned with
16 the outcome of the cause named in the caption.

17      Dated this 19th day of March 2024 in Honolulu,
   Hawaii.

18

19 _____
        WILLIAM T. BARTON, CSR No. 391
20        Certified Shorthand Reporter

21

22

23

24

25

RALPH ROSENBERG COURT REPORTERS, INC.
Honolulu, Hawaii (808) 524-2090

Jeffrey C Pratt
Boat Salvage
Mala ramp January 2022

1-2-2022   2:45 PM to 7 PM    First clean up boat & Beach - Mast down.
1-3-2022   5:15 AM to 9:30AM  Beach clean up & Boat
1-4-2022   7:30 AM to 4PM     Winched boat off Mala Wharf & secured.
1-5-2022   8 AM to 1:30 PM    removed 1 out Board & Debris removal.
-6-2022    8 AM to 1:30 PM    snorkle Debris removed & small Fibs glass.
-10-2022   8 AM to 11 AM      removal small debris.

                31 hrs

**Exhibit H
3/14/24
Jeff Pratt**

H