IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS, LLC, | CIVIL NO. 22-00064 JAO-KJM |
| Plaintiffs, | |
| vs. | ORDER DENYING DEFENDANT RAIED J. ALFOUADI'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 77], OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO ALL CLAIMS (ECF NO. 166) |
| RAIED J. ALFOUADI; UNNAMED SAILING VESSEL in rem, Hull No. HA 6874 H; DOE DEFENDANTS 1 - 20, DOE CORPORATIONS, 1 - 20, DOE GOVERNMENT AGENCIES 1 - 20, DOE PARTNERSHIPS 1 - 20, | |
| Defendants. | |

**ORDER DENYING DEFENDANT RAIED J. ALFOUADI'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 77], OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO ALL CLAIMS (ECF NO. 166)**

In this admiralty case, a sailing vessel owned by Raied J. Alfouadi ("Alfouadi") ran aground near Mala Wharf in Lahaina, Maui. David Demarest ("Demarest") and his company Green Mountain Mycosystems, LLC ("Plaintiff" or "GMM") allegedly agreed to salvage Alfouadi's vessel, for which they were never paid. Demarest and GMM sued Alfouadi and Sailing Vessel Hull No. HA 6874 H *in rem* (the "Vessel," and with Alfouadi, "Defendants"), in order to receive

payment.  Alfouadi now moves to dismiss ("Motion to Dismiss"), or in the

alternative, for summary judgment as to all claims ("Motion for Summary

Judgment"), ECF No. 166 (collectively, "Motion"), in Plaintiff's First Amended

Complaint, ECF No. 77 ("FAC").  GMM opposes the Motion, ECF No. 176

("Opposition"), and Alfouadi offers a reply, ECF No. 178.  The Court held a

hearing on the Motion on March 7, 2025.  *See* ECF No. 179.

For the reasons stated below, the Court DENIES Alfouadi's Motion as to all

claims.

## I.    BACKGROUND

### A.    Factual History

The FAC brings claims of Breach of Oral Contract (Count I), Breach of

Implied Contract (Count II), Quantum Meruit (Count III), and Pure Salvage Award

(Count IV).  *See* ECF No. 77.  The facts relevant to deciding the Motion require

review of the FAC's allegations, the procedural history of the case—in particular

how the parties and the Court handled Defendants' First Request for Answers—

and the concise statements of facts.  Each are addressed below.

### 1.    FAC Allegations

According to the FAC, Alfouadi's 29-foot sailing vessel ran aground at the

Mala Wharf in Lahaina, Maui on the afternoon of January 2, 2022.  *See* ECF No.

77 ¶ 8.  After the Vessel grounded, GMM and Demarest "immediately began

2

salvage operations at the request of and with the permission of Defendants." *Id.* ¶

10. GMM and Demarest sought to remove the "wreckage and hazardous material"

and also "to minimize the potentially substantial environmental impact" of the

Vessel and its debris. *Id.* GMM and Demarest discussed the salvage operation

with representatives of "DOBOR"[1] that same night. *Id.* GMM and Demarest

voluntarily accepted the high risk of the operations based on Alfouadi's

representation that his vessel had a $500,000 liability insurance policy and promise

of timely opening a claim. *Id.* ¶ 14. Alfouadi also accepted their offer to be the

"Salvager on Record" by "verbally affirming in front of DLNR[2] Officer

Fernandez," and Demarest that Plaintiffs "were in charge of the salvage operation"

and Defendants would submit a claim "to fairly compensate" them. *Id.*

The salvage operation was "difficult and was conducted at great risk and

peril to" GMM and Demarest. *Id.* ¶ 11. Nonetheless, after seventeen days, GMM

and Demarest completed the salvage operation. *Id.* By doing so, they prevented

significant environmental damage (and corresponding legal liability) that would

have resulted from the grounding. *Id.* Despite their work, and despite having

---

[1] While it is not defined, the Court understands "DOBOR" to be an acronym for the
Hawaiʻi Department of Land and Natural Resources' Division of Boating and Ocean
Recreation.

[2] This term is also not defined, but the Court understands "DLNR" to be an acronym
for Hawaiʻi Department of Land and Natural Resources.

demanded payment from Defendants and Defendants' insurers, GMM and

Demarest were not compensated for their work.  *Id.* ¶ 12.

Plaintiff contends that Alfouadi's failure to pay constitutes a breach of an

oral or implied salvage contract (Counts I and II), *id.* ¶¶ 14, 19, and/or entitles it to

quantum meruit (Count III), *id.* ¶¶ 23–27, or a pure salvage award (Count IV), *id.*

¶¶ 28–32.

### 2.   The First Request for Answers and Related Litigation

The procedural history of this case complicates its facts.  GMM and

Demarest brought this lawsuit against Defendants in February 2022.  ECF No. 1.

On February 21, 2024, Alfouadi served Demarest with a First Request for Answers

("1RFA"), which required a response 30 days after service.  ECF Nos. 55, 110-2,

110-3; Fed. R. Civ. P. 36(a)(3).  GMM and Demarest missed that deadline and

responded months later, on July 19, 2024.  ECF No. 88; ECF No. 97 at 2 ¶¶ 5a, 6.

On July 22, 2024, Alfouadi sought to deem the facts in the 1RFA admitted

by filing Motion in Limine ("MIL") No. 1, asking the Court to preclude GMM and

Demarest "from introducing any evidence or argument contrary to the admitted

matters in 1RFA."  ECF No. 91-1.  The Court held a hearing and granted

Alfouadi's MIL No. 1.  ECF No. 123.  GMM and Demarest sought to withdraw or

amend their responses to the 1RFA through various filings, ECF Nos. 97, 122, 127,

that the Court denied, ECF Nos. 119, 125, 133.

4

The next twist was when Demarest moved for voluntary dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(2), conceding that he had no standing on the claims in this action because he assigned all of his individual claims to GMM.  ECF No. 154.  The Court granted his motion.  ECF No. 157.

The most significant procedural kicker came when GMM—now the sole remaining Plaintiff—pointed out in its opposition to the instant Motion that the 1RFA was addressed only to Demarest, and so any admissions therein must apply to Demarest only.  *See* ECF No. 168-4.

The Court will later address to whom the admissions apply, *see* Section B(1)(b), *infra*.  For now, it's sufficient to say that the failure to respond to the 1RFA meant that either Demarest or Demarest *and* GMM admitted that:  (1) there was no contract between them and Alfouadi, *see* ECF No. 168-4 ¶¶ 20–23, 35–37; (2) Demarest misrepresented to Alfouadi that he had been awarded a salvage contract by the State of Hawaiʻi even though this was not true, and Alfouadi detrimentally relied on this misrepresentation, *see id.* ¶¶ 26–27, 30–34; (3) prior to January 2, 2022, Demarest and GMM had no professional experience in the business of marine salvage and had never worked for a marine salvage company and GMM was not engaged in the business of marine salvage between January 2 and 31, 2022, *see id.* ¶¶ 11–14; and (4) the Vessel was a total loss, *see id.* ¶¶ 39–41, 44.

5

### 3.    Concise Statements of Facts

Meanwhile, GMM rebuts some of the admissions with its Concise Statement of Facts and related exhibits.  GMM alleges that Demarest had told Alfouadi that his business (GMM) was not yet authorized in Hawai'i but he would be shifting the salvage work over to the business as soon as possible.  *See* ECF No. 171-2 at 4, 6.  Alfouadi, on the other hand, contends that he had stopped speaking to Demarest after January 6, 2022—well before the salvage was allegedly completed—and that GMM was not registered in Hawai'i as a business entity until January 12, 2022.  *See* ECF No. 168-10 at 3–4.

Ultimately then, the Motion boils down to two questions.  The first is a legal question about the effect of the failure to respond to the 1RFAs.  The second is a factual question about whether GMM was a party to the alleged salvage contract or, more precisely, whether the answer to that question is really in dispute.

## II.    DISCUSSION

### A.    Motion to Dismiss

In moving to dismiss, Alfouadi argues that:  (1) GMM lacks standing because it was not a valid assignee of Demarest's claims; and (2) Demarest's voluntary dismissal renders the case moot.  *See* ECF No. 166-1.  The Court does not find these arguments compelling.

1.    **Standing**

Alfouadi argues that GMM did not allege a valid assignment of Demarest's

claim in the FAC and therefore the case should be dismissed under Rule 12(b)(1)

for lack of standing.  ECF No. 166-1 at 12–13.  He further contends that the

attempted assignment of rights to GMM amounts to an acknowledgement that

GMM's standing was derived from Demarest's.  *Id.* at 12.  GMM responds that the

FAC alleges claims on behalf of both GMM and Demarest.  ECF No. 170 at 4–6.

 Of course, "[s]tanding is a threshold matter central to . . . subject matter

jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

"[L]ack of Article III standing requires dismissal for lack of subject matter

jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067

(9th Cir. 2011) (emphasis and citations omitted).  When "ruling on a motion to

dismiss for want of standing," the court "must accept as true all material

allegations of the complaint, and must construe the complaint in favor of the

complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also*

*Confederated Tribes & Bands of Yakama Nation* v. *Yakima Cnty.*, 963 F.3d 982,

989 (9th Cir. 2020).

"Three elements form the irreducible constitutional minimum of standing to

file suit in federal court." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803,

816 (9th Cir. 2017) (citation and internal quotation marks omitted).  "The plaintiff

must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Id.* (citation and internal quotation marks omitted). "The injury

in fact must constitute 'an invasion of a legally protected interest which is (a)

concrete and particularized, and (b) actual or imminent, not conjectural or

hypothetical.'" *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

As an initial matter, Alfouadi's argument that GMM must not have its own

independent standing because Demarest assigned his claims to it, *see* ECF No. 166

at 12, is not founded in the law and indeed, Alfouadi offers no law in support of

this implication. In any event, Alfouadi presents a facial challenge to GMM's

standing by arguing that the allegations in the FAC are insufficient on their face to

invoke federal jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

2014) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

2004)). His primary argument here is that "GMM's Article III standing arises

from the alleged assignment of Mr. Demarest's individual claims to GMM[,]" but

GMM cannot show a valid assignment. ECF No. 166-1 at 12–13. He contends

that "[t]he FAC is completely devoid of any" allegations suggesting such

assignment. *Id*. at 14.

But, as GMM points out, the FAC outlines claims GMM brings directly

against Alfouadi, and so GMM does not solely rely on the assignment for standing.

*See* ECF 170 at 4.  More specifically, the FAC asserts claims on behalf of

Plaintiffs—plural—which included both GMM and Demarest at the time of filing.

*See* ECF No. 77 ¶¶ 13–32.  Demarest's voluntary dismissal also doesn't say that

his claims are the sole claims that GMM has, only that he assigned his individual

claims to GMM.  *See* ECF No. 154.

Alfouadi argued at the Motion Hearing that "Plaintiff GMM" only appears a

few times throughout the FAC, which means that those were the few instances that

GMM acted separately from Demarest.  *See* ECF No. 176 at 19–20.  Alfouadi's

argument necessarily requires the Court to read the FAC as interpreting "Plaintiffs"

to mean only Demarest.  *See*, *e.g.*, ECF No. 77 ¶ 11 ("the salvage operation was

difficult and was conducted at great risk and peril to Plaintiffs"); *id*. ¶ 12

("Plaintiffs have not received any[] compensation for their work").  And this is

despite the fact that "Plaintiffs" is defined as both Demarest and GMM, *see id*. at

1, and "Plaintiff" isn't defined in the FAC.  Alfouadi's argument fails to pass

muster under the Court's Rule 12(b)(1) analysis, which accepts the FAC as true

and draws all reasonable inferences in GMM's favor.  *See Leite*, 749 F.3d at 1121

(citing *Pride*, 719 F.3d at 1133).  Applying that standard, the Court determines that

the FAC alleges claims on behalf of both Demarest and GMM and therefore GMM

9

asserted its own claims and has its own separate interest in the lawsuit. The Court

thus rejects Alfouadi's argument that GMM lacks standing under Rule 12(b)(1).

### 2.    Mootness Due to Res Judicata Under Rule 12(b)(1)

In a similar vein, Alfouadi also contends that GMM's claims are now moot

because Demarest's voluntary dismissal with prejudice has a res judicata effect on

the case. ECF No. 166-1 at 14–17. GMM avers that that it asserted its own

independent claims in the FAC and Demarest's dismissal does not render them

moot. ECF No. 170 at 6–7. Alfouadi replies that, should the Court determine that

Demarest's voluntary dismissal was an adjudication on the merits, then it should

dismiss GMM's claims as moot because they are derived from Demarest's. ECF

No. 176 at 18.

"At all stages of litigation, a plaintiff must maintain a personal interest in the

dispute. The doctrine of standing generally assesses whether that interest exists at

the outset, while the doctrine of mootness considers whether it exists throughout

the proceedings." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021). "[I]f in

the course of litigation a court finds that it can no longer provide a plaintiff with

any effectual relief, the case generally is moot." *Id.*

"Claim preclusion, or res judicata, bars 'successive litigation of the very

same claim' following a final adjudication on the merits involving the same parties

or their privies." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1159 (9th

10

Cir. 2002) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Stewart v. U.S. Bancorp.*, 297 F.3d 953, 956 (citation and internal quotation marks omitted). "A voluntary dismissal of a claim prior to any adjudication and without any stipulated findings of fact does not actually litigate any issue." *Amadeo*, 290 F.3d at 1159 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955)).

There was no final judgment on the merits as to Demarest's claims against Defendants, and so res judicata does not apply here. *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161 (9th Cir. 2016), is directly on point. There, the Ninth Circuit rejected an argument that a voluntary dismissal under Fed. R. Civ. P. 41(a)(2) based on lack of personal jurisdiction amounted to a judgment on the merits for res judicata purposes. *Id*. at 1164. The Ninth Circuit explained that its conclusion would equally apply to a voluntary dismissal for lack of subject matter jurisdiction. *See id*. at 1166 n.4 ("The Supreme Court has made no distinction between the two types of jurisdiction when considering the effect of a judgment. And the underlying logic applies equally to both types of jurisdiction: if the court lacks power to act, then it may not pronounce a binding judgment on the merits[.]" (citation omitted)). Applying *Ruiz* here, by granting Demarest's motion for

11

voluntary dismissal, the Court acknowledged that it did not have jurisdiction over Demarest and its dismissal order was not merit-based, so res judicata can't apply.

Alfouadi argues that, because the Court's dismissal order regarding Demarest was with prejudice, and ample caselaw holds that dismissals with prejudice do constitute judgments on the merits, then that order has res judicata effect. *See* ECF No. 166-1 at 15. But *Ruiz* confirms that "the 'with prejudice' label is not always conclusive for the purpose of res judicata and, indeed, does not equate to an adjudication on the merits when the dismissal is for lack of jurisdiction." 824 F.3d at 1168.

The Court therefore rejects Alfouadi's contention that Demarest's voluntary dismissal with prejudice renders GMM's case moot. Furthermore, as the Court stated above, the FAC alleges claims on behalf of both GMM and Demarest. Even if there was res judicata as to Demarest's claims, GMM asserted its own independent claims so the case would not be mooted. Alfouadi's Motion to Dismiss is thus DENIED in full.

## B.    Motion for Summary Judgment

The Court turns next to Alfouadi's Motion for Summary Judgment, which (1) avers that GMM is judicially estopped from contradicting the 1RFA admissions, which are legally dispositive of the case; (2) again argues that GMM lacks standing; and (3) contends that GMM cannot succeed on the merits. *See* ECF

No. 166-1 at 17–31; Fed. R. Civ. P. 56(a).  The Court again finds the arguments

unpersuasive.

Summary judgment is appropriate when there is no genuine issue of material

fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W.*

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987).  In a motion for summary judgment, the court must view the facts and draw

inferences in the light most favorable to the nonmoving party.  *See State Farm Fire*

*& Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of

any genuine issue of material fact, the nonmoving party must set forth specific

facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at

630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for

summary judgment in the absence of any significant probative evidence tending to

support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952

F.2d 1551, 1558 (9th Cir. 1991) (citation omitted).

13

Before turning to the substantive arguments, the Court addresses Alfouadi's

objections to the evidence GMM presents in its Opposition.  ECF No. 176 at 10–

11.  Alfouadi, noting that the Court must only consider admissible evidence and

cannot take into account unauthenticated documents, seeks to exclude GMM's

Exhibits 1, 2, 4, 6, and 10.  *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773

(9th Cir. 2002); ECF No. 176 at 10–11.  However, Alfouadi conceded at the

Motion hearing that the *Orr* standard was abrogated by the 2010 amendments to

the FRCP Rule 56.  *See David v. Betts*, 734 F.Supp.3d 1050, 1078 n.20 (D. Haw.

2024).  The Court therefore applies the current FRCP Rule 56 standard, which

"'mandate[s] only that the substance of the proffered evidence would be admissible

at trial.'"  *Id.* (citing *Dinkins v. Schinzel*, 362 F.Supp.3d 916, 923 (D. Nev. 2019));

*see also Romero v. Nev. Dep't of Corr.*, 673 F.App'x 641, 644 (9th Cir. 2016);

Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.  At this stage, the

Court does not "focus on the admissibility of the evidence's form" and instead

focuses "on the admissibility of its contents."  *Sandoval v. Cnty. of San Diego*, 985

F.3d 657, 666 (9th Cir. 2021) (citation omitted).  Having reviewed all of the

exhibits at issue, the Court concludes all of them could be admissible at trial[3] and

so overrules Alfouadi's objections as to all Exhibits.

### 1.    The 1RFA Admissions

####    a.  Judicial Estoppel

The Court begins the summary judgment analysis by first turning to

Alfouadi's argument that GMM should be judicially estopped from presenting any

argument inconsistent with its past positions regarding the 1RFA admissions.

Alfouadi contends that GMM is judicially estopped from contradicting its

deemed admissions, which both parties previously agreed were fatal to Demarest's

and GMM's claims.  *See* ECF No. 166-1 at 24–25.  GMM responds that it is not

bound by the deemed admissions from the 1RFA, because:  (1) Alfouadi served the

1RFA only on Demarest and not GMM and (2) the 1RFA questions as to the

causes of actions were addressed to "You," meaning Demarest.  *See* ECF No. 170

at 13.  *See* ECF No. 170 at 13–14.  Alfouadi replies that:  (1) GMM concedes the

---

[3] More specifically, Exhibits 1 and 4, which are deposition transcripts, *see* ECF Nos.
171-2, 171-5, reflect the testimony of potential witnesses at trial and so are
admissible.  *See* Fed. R. Evid. 602.  Exhibit 2, which is a website printout from the
State of Vermont Business Registration website reflecting GMM's business
registration, *see* ECF Nos. 171-1, 171-3, is presumably something that could be
authenticated as a record.  *See* Fed. R. Evid. 803(6) & 803(8).  Exhibit 6 is a picture
of Officer Fernandez's notes from January 2, 2022, and so may be authenticated by
him.  *See* Fed. R. Evid. 602 & 803(6).  Finally, Exhibit 10 is an expert report, the
contents of which could be admissible at trial as expert testimony.  *See* Fed. R. Evid.
702.

judicial estoppel issue by not addressing it in the Opposition and (2) GMM's argument that it is not impacted by the deemed admissions contradicts earlier statements and therefore it should be judicially estopped from making such an argument now.  *See* ECF No. 176 at 6–9; ECF No. 123.

Alfouadi also contends that the Court's prior ruling on MIL No. 1—that Demarest's and GMM's failure to respond to the 1RFA resulted in admissions that they could not walk away from—precludes GMM from presenting any contrary evidence at trial and so summary judgment is warranted.  *See* ECF No. 166-1 at 23–25.  GMM responds that the Court's prior in limine ruling was not specific as to GMM.  *See* ECF No. 170 at 13.

In *New Hampshire*, the Supreme Court explained that judicial estoppel is an equitable doctrine that "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  532 U.S. at 749 (citation and internal quotation marks omitted).  The real purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id*. at 749–50 (citation and internal quotation marks omitted).  In other words, it "precludes a party from *gaining an advantage* by taking one position, and then seeking a second advantage by taking an

incompatible position." *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (emphasis added) (citation and internal quotation marks omitted).

*New Hampshire* outlined three non-exhaustive factors that inform the applicability of judicial estoppel: (1) whether "a party's later position [is] 'clearly inconsistent' with its earlier position"; (2) whether a party successfully persuaded "a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1045 (9th Cir. 2016) (citations and some internal quotation marks omitted); *see New Hampshire*, 532 U.S. at 750–51. These factors are not "inflexible prerequisites[.]" *New Hampshire*, 532 U.S. at 751.

Some procedural context is helpful here in order to examine the first factor. On July 22, 2024—and likely upon discovering the fact that they had not responded to the 1RFA in time—Demarest and GMM ("Plaintiffs") sought leave from Magistrate Judge Mansfield to amend the Scheduling Order to allow them to file answers to the 1RFA, arguing that there was good cause to do so and that doing so would allow the case to be decided on the merits. *See* ECF No. 97. Judge

Mansfield denied that request, and Plaintiffs objected to his decision before this Court. *See* ECF Nos. 119, 122. Meanwhile, Alfouadi filed MIL No. 1, seeking to preclude Plaintiffs from presenting any evidence at trial that was inconsistent with the 1RFA admissions. *See* ECF No. 91. This Court both overruled the objection to Judge Mansfield's decision and granted MIL No. 1. *See* ECF Nos. 123, 125. When ruling on MIL No. 1, the Court asked the parties to brief "how this ruling affects each count of the Complaint." ECF No. 123.

In response, GMM stated that that "[t]he deemed [admissions] make presentation of any causes of action untenable. Specifically, in relation to the contract related causes of action some of the deemed admissions include admissions that there was no contract of any sort *between the parties*." ECF No. 127 at 2 (emphasis added). They also acknowledged that the admissions essentially doomed their Quantum Meruit and Pure Salvage claims. *See id.* at 3 ("Plaintiffs cannot adequately present any aspect of their case with a conclusively established fact that they acted in bad faith[.]"). Nonetheless, Plaintiffs "reiterate[d] their objections to this harsh result" and also sought reconsideration of the Court's ruling on MIL No. 1, stating that "the consequence of granting Defendant's Motion in Limine No. 1 is functionally dispositive to all claims" and arguing that "[a]n *in limine* motion is not a proper vehicle for a party to ask the

18

Court to weigh the sufficiency of the evidence[.]" *Id*. at 3, 5 (citation and internal quotation marks omitted).

The Court does view GMM's past position (that the deemed admissions reflect a lack of contract between the parties) as inherently contradictory with its current argument (that the relevant questions in the 1RFA were not aimed at GMM). But that alone does not mean that GMM should be estopped from arguing that the admissions do not apply to it.

Considering the second *New Hampshire* factor—whether convincing a court to take an inconsistent position in a later proceeding would suggest that the court was misled at some point—favors GMM. The Court does not conclude that GMM's prior position on the 1RFA was intended to mislead the Court. Indeed, it even asked the Court to reconsider its ruling in MIL No. 1 and had objected to Judge Mansfield's order because it wanted the case to be tried on the merits. It makes no sense that the earlier position it took regarding 1RFA was an effort to do anything other than convince the Court that its rulings had been harsh.

Regarding the third factor—whether GMM gains an unfair advantage by taking this new position, the Court is loathe to view a trial of this case on the merits as an inequitable detriment to Alfouadi. *See GT Beverage Co. LLC v. Coca Cola Co.*, 2010 WL 11595832, at *6 (C.D. Cal. Feb. 2, 2010) (in a motion to dismiss counterclaims based on judicial estoppel, explaining that "[t]he Court fails

to see how allowing [the counterclaims] to survive this motion would undermine the integrity of the judicial system").

Ultimately, judicial estoppel is an equitable doctrine meant to maintain the integrity of the courts.  The Court views the use of it here as inequitable to GMM and so DENIES the motion for summary judgment on that ground.

### b.  The Substance of the 1RFA

The Court is persuaded that relevant 1RFA questions were indeed directed to Demarest and not GMM and so will not attribute Demarest's admissions to GMM. Significantly, during the hearing on the Motion, defense counsel conceded that some of the questions in the 1RFA were specifically targeted at GMM, suggesting at the very least that only some of the questions applied to Demarest and some of the questions applied to GMM, and perhaps some applied to both.

The 1RFA is entitled "Request for Admissions and Second Request for Answers to Interrogatories to Plaintiff David Demarest."  ECF No. 171-9 at 3.  The caption says nothing about GMM.  On the first page, the 1RFA indicates that it is addressed to "DAVID DEMAREST" and "requests that Plaintiff DAVID

DEMAREST ('Plaintiff') pursuant to Rule 36 of Hawaii Rules of Civil Procedure[4]

. . . respond to following admissions within 30 days of receipt hereof." *Id.* This

suggests that all the 1RFAs were directed at Demarest only.

On a substantive note, Question 2 makes clear that "You" refers to "Plaintiff

David Demarest." ECF No. 171-9 at 4. Questions 13 through 38[5] ask a series of

questions of Demarest ("You") or regarding his ("Your") behavior surrounding the

alleged contract and salvage operation. *See* ECF No. 171-9 at 6-10. The one

exception is Question 15, which reads, "After the Vessel ran aground at Mala

Wharf, it was a total loss." *Id.* at 6.

At the hearing, defense counsel argued that the questions that relate to GMM

were plainly intended to be answered by Demarest as the sole officer of GMM.

But nothing in the 1RFA says as much, and in any event, the most consequential

questions that relate to the claims were directed at "You," i.e., Demarest. The

Court therefore concludes that the 1RFAs bear no weight in its summary judgment

analysis and they are not legally dispositive of the claims.

---

[4] Hawaii Rule of Civil Procedure Rule 36 allows for service of requests for
admission "upon the plaintiff after commencement of the action and upon any other
party with or after service of the summons and complaint upon that party."
(emphasis added). The Court suspects that Alfouadi mistakenly cited to this state
procedural rule in the 1RFA instead of relying on the relevant Federal Rule of Civil
Procedure 36.

[5] The Questions are followed by "Admit _____ Deny _____" options. *See id.*

### 2.    Standing and Merits

Alfouadi's arguments regarding standing and the merits of summary judgment overlap significantly, and so the Court addresses both here. To the extent his arguments on this front rely on the 1RFA admissions, *see*, *e.g.*, ECF No. 166-1 at 23–27, the Court has already addressed those arguments above, so it won't address those arguments here and again declines to consider any of Demarest's admissions in its analysis.

Alfouadi's standing argument in the Motion for Summary Judgment differs from his argument in the Motion to Dismiss. Here, he contends that, regardless of assignment, there is no evidence that GMM was part of a contract with Alfouadi, and so he cannot prevail on any of the claims. *See id.* at 17–23. GMM rebuts that there are disputed facts here. *See* ECF No. 170 at 8-13. The Court concludes that the question of whether GMM was part of the contract with Alfouadi cannot be settled until trial because there remain outstanding disputes of material fact.

The Court notes that, "[e]ach element of standing 'must be supported with the manner and degree of evidence required at the successive stages of the litigation.'" *Maya*, 658 F.3d at 1068 (ellipsis omitted) (quoting *Lujan*, 504 U.S. at 561). How a court views the relevant facts depends on the nature of the standing motion. "In response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other

evidence 'specific facts.'" *Lujan*, 504 U.S. at 561 (citation omitted). These specific facts, proffered "for purposes of the summary judgment motion[,] will be taken to be true." *Id.*

### a. Count I (Oral Contract) and Count II (Implied Contract)

When considering the contract claims here, the Court turns to Hawaiʻi law. *See S/Y Paliador, LLC v. Platypus Marine, Inc.*, 750 F.Supp.3d 1187, 1198 (W.D. Wash. 2024) (explaining that in the exercise of admiralty jurisdiction, "[s]tate law may supplement federal maritime law when such federal common law is silent on an issue or when a dispute is inherently local." (citation omitted)); *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024) ("When no established [federal maritime] rule exists, and when the federal courts decline to create a new rule, federal courts apply state law." (citation omitted)); ECF No. 76 at 7 ("Ultimately, the Court concludes that it has admiralty jurisdiction under § 1333 and—as both parties agree—Hawaiʻi law regarding contract formation applies."). To be enforceable under Hawaiʻi law, an oral contract must include an offer, acceptance, and consideration. *See Queens Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F.Supp.2d 1131, 1144 (D. Haw. 2013). An implied contract may be found where "the ordinary course of dealing and common understanding . . . show a mutual intention to contract." *Simmons v. Samulewicz*, 129 Hawaiʻi 507, 515, 304 P.3d 648, 656 (2013) (citation omitted). "A breach of contract claim

generally requires that the parties be in privity of contract." *Peters v. Lexington Ins. Co.*, 836 F.Supp.2d 1117, 1123 (D. Haw. 2011) (citing *Hunt v. First Ins. Co. of Haw., Ltd.*, 82 Hawai'i 363, 367, 922 P.2d 976 (App. 1996)).

Alfouadi argues that it is undisputed that GMM was not part of any contract with him, *see* ECF No. 166-1 at 18, and focuses on Demarest's deposition testimony:

> Q:    And again, at least per your testimony today, when you allegedly entered into an oral agreement on January 2, 2022, with Mr. Alfouadi, Green Mountain Mycosystems LLC was not registered to do business in the State of Hawaii, correct?
>
> A:    Correct.  Initially it was me as an individual and then I shifted it to my business as soon as I could.

ECF Nos. 168 at 2 ¶ 3, 168-10 at 3.

Additionally, Alfouadi proffers that, before the attempted salvage completed, on January 6, 2022, Demarest and Alfouadi stopped speaking to one another, and GMM was not registered to do business in Hawai'i until January 12, 2022.  ECF No. 166-1 at 22.  Again, he cites Demarest's deposition, where Demarest acknowledges that he didn't register GMM to do business in Hawai'i until that date, *see* ECF Nos. 168 at 2 ¶ 8 & 168-10 at 3, and also admits that he and Alfouadi stopped speaking to one another on January 6, *see* ECF Nos. 168 at 2 ¶ 8 & 168-10 at 4.

24

GMM responds that it did exist prior to January 2, 2022—it was registered in Vermont as early as 2004.  *See* ECF Nos. 170 at 9 & 171 at 2–3 ¶ 3.  GMM further contends that, under Hawaiʻi law, it was not required to register in any event, and Alfouadi offers no authority for the argument that a business can only enter into a contract if it is registered within the state where the contract was formed.  *See* ECF No. 170 at 10 (citing HRS § 414-431(b)(10) [6]).

Finally, GMM points to deposition transcripts to contend that there is at least a question of whether Alfouadi was aware of GMM's role in the contract.  In Demarest's March 18, 2024 deposition, he says that "[Alfouadi] and I spoke with [Officer Fernandez]" with Alfouadi "as the owner" and "me as the person that had taken official responsibility as the salvor and responsibility to remove the wreck. And I told him that my business was not yet authorized in Hawaii, but that I would be shifting it over to my business as soon as I possibly could."  *See* ECF No. 171-2 at 6.  Demarest emphasized, "I made it clear that my intention would be to shift the liability on to my business as soon as I practically could."  *Id.* at 4.  And in Alfouadi's deposition, Alfouadi suggested that Demarest told him about GMM

---

[6] HRS § 414-431(b)(10) states that "[a] foreign corporation may not transact business in this Sate until it obtains a certtrificate of authority" but excludes from the definition of "transacting business" "[c]onducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature."

when discussing the salvage.  *See* ECF 171-8 at 9 ("He could have just honestly said, Okay, yeah, I did diving, I did this, I did that.  No.  He's got this ego.  *I'm a company* and I'm this and that." (emphasis added.))

In corroboration, GMM also proffers Officer Fernandez's salvage report, in which he noted that "DEMAREST related that he will be taking care of the salvaging of the vessel through his company, 'Green Mountain Mycosystems.'" ECF No. 171-6 at 4.  In the paragraph immediately before that in the report, Officer Fernandez states, "I made contact with ALFOUADI and DEMAREST" and reports what Alfouadi told him.  *Id.* at 3.  Taking this evidence in the light most favorable to GMM, Alfouadi was aware that GMM would be handling the salvage operations.

It is clear to the Court that there remains a dispute of fact as to who said what to whom regarding the forming of the alleged oral and/or implied contract. This means, then, that the Court cannot determine at this pre-trial stage that GMM was not a part of any salvage contract with Alfouadi and so cannot conclude now that GMM doesn't have standing to bring Counts I and II.  For this reason, summary judgment is not warranted as to Counts I and II.

### b.  Count III (Quantum Meruit)

Alfouadi next attacks GMM's Quantum Meruit claim on both standing and merits grounds.  He argues that, due to a lack of any understanding between him

26

and GMM, there could not have been a reasonable expectation of compensation nor any benefit conferred by GMM—meaning that GMM cannot show injury in fact and causation.  *See* ECF No. 166-1 at 22-23.  GMM responds that there are disputed facts as to GMM's role in the salvage operation.  *See* ECF No. 170 at 12.

In Hawaiʻi, "'[t]he basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor[e].'"  *Hawaii Ventures, LLC v. Otaka, Inc.*, 114 Hawaiʻi 438, 164 P.3d 696, 742 (2007) (quoting *Maui Aggregates, Inc. v. Reeder*, 50 Haw. 608, 610, 446 P.2d 174, 176 (1968)).  "Under Hawaii law, whether the [d]efendants received some benefit in the exchange is key."  *UCSF-Stanford Health Care v. Hawaii Mgmt. All. Benefits & Servs., Inc.*, 58 F.Supp.2d 1162, 1171 (D. Haw. 1999) (citation omitted).  "If a party derives any benefit from services rendered by another, the law reasonably implies a promise to pay on the part of the one who has received such benefit, such amount as it is reasonably worth."  *Maui Aggregates, Inc.*, 50 Haw. at 610, 446 P.2d at 176 (citation and internal quotation marks omitted).

The parties again cite to the deposition testimony described above regarding whether a contract was in place between Alfouadi and GMM.  *See* ECF No. 166-1 at 22; ECF No. 168 at 2, ¶¶ 3–4; ECF No. 170 at 12.  Additionally, Demarest's deposition testimony offers some details of the benefit conferred on Alfouadi, such

27

as removing hazards from the water and removing the boat's mast.  *See* ECF No.

171-2 at 7.  He specifically stated that Jeff Pratt, Alfouadi, and Demarest were all

involved in removing the mast.  *Id.*  GMM also points to Alfouadi's deposition

testimony saying there was "about a car garage worth" of items and equipment in

the vessel, *see* ECF No. 171-8 at 4, and that "some items did survive" and were

sold, *see id.* at 7.

Viewed in the light most favorable to GMM, the Court concludes that there

is a genuine dispute over whether GMM conferred benefit on Alfouadi and, in the

same vein, whether GMM suffered an injury caused by Alfouadi's non-payment.

Like Counts I and II, Count III is a triable issue and should resolved on the merits.

The Court thus DENIES Alfouadi's Motion for Summary Judgment as to Count

III.

### c.  Count IV (Pure Salvage)

Alfouadi attacks both the standing and merits of GMM's Pure Salvage claim

on the basis that there is no evidence GMM was a volunteer.  ECF No. 166-1 at 23,

30.  While Alfouadi doesn't specify what he means here, the Court presumes that

this argument dovetails with his position that GMM was not a member to the

contract and did not conduct the salvage operations.  Additionally, while not

explicitly stated, the Court interprets his standing argument to be that GMM could

28

not have suffered an injury because it was not a volunteer.  GMM responds that it

was indeed involved in the salvage.  *See* ECF No. 170 at 12.

There are three elements to a valid salvage claim:  (1) property in peril on

navigable waters; (2) voluntary services; and (c) success in whole or in part.  *Saint*

*Paul Marine Transp. Corp. v. Cerro Sales Corp.*, 332 F.Supp. 233, 238 (D. Haw.

1971) (citation omitted).  "'Success' in salvage law is 'preservation of the property

for the benefit of the owner.'"  *Evanow v. M/V Neptune*, 163 F.3d 1108, 1115 (9th

Cir. 1998) (citing 3A Martin J. Norris, Benedict on Admiralty § 90 (7th ed. 1993)).

"A salvage award is decreed in a court of admiralty not in the way of a mere

quantum meruit for work and labor performed, but as a bounty given on grounds of

public policy to insure safety of property and life at sea" and "to save and restore

property to its owners."  *Saint Paul Marine Transp. Corp.*, 332 F.Supp. at 238

(citation and internal quotation marks omitted).

Before turning to the merits, the Court notes that "[a] salvage contract

precludes the right to 'pure' salvage."  *Tug Blarney, LLC v. Ridge Contracting,*

*Inc.*, 14 F. Supp.3d 1255, 1266 (D. Alaska 2014) (citation omitted).  But it need

not decide now whether GMM can prove the existence of a salvage contract, only

that there is a dispute of fact as to both the contract claims and the pure salvage

claim.  *See id.* ("The existence of a salvage contract is typically raised as a defense

to a pure salvage claim in order to escape the application of the more generous

29

pure salvage award rule.  The party asserting the defense of a salvage contract bears the burden of demonstrating the existence of that contract."); *Evanow*, 163 F.3d at 1115 (same).

In any event, for the reasons already stated, there remains a factual dispute as to whether GMM (rather than Demarest as an individual) did any of the salvage work.  This means that the Court cannot determine as a matter of law that GMM does not have standing on its salvage claim and similarly, that it cannot prevail on the merits of that claim.

Simply put, the question of what happened in this case and whether GMM suffered the alleged injuries is better left for a trial on the merits.

### III.   CONCLUSION

For the reasons stated above, the Court DENIES the Motion.  The case will proceed to a bench trial to be scheduled by the Court.

The Court DIRECTS the parties to file a Joint Statement no later than 14 days after entry of this order regarding viable trial dates after July 3, 2025.

//

//

//

//

//

30

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, April 1, 2025.

Jill A. Otake
United States District Judge

---

CIV. NO. 22-00064 JAO-KJM, *Demarest et al. v. Alfouadi, et al.*; Order Denying Defendant Raied J. Alfouadi's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 77], or in the Alternative, for Summary Judgment as to All Claims (ECF No. 166)