# Exhibit "A"

Of Counsel:
MYHRE & STORM

JAMES V. MYHRE        #5092-0
jmyhre@mtmhawaiilaw.com
BRENT K. WILSON      #10518-0
bwilson@mtmhawaiilaw.com
1003 Bishop Street, Suite 1290
Honolulu, Hawaii  96813
Telephone (808) 524-2466

Attorneys for Defendant
RAIED J. ALFOUADI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC, | CASE NO. 22-CV-00064-JAO-KJM (In Admiralty) |
| Plaintiffs, | DEFENDANT RAIED J. ALFOUADI'S NOTICE OF SUBMISSION OF HIS COUNTERDESIGNATED |
| vs. | TRANSCRIPTS OF CORY FERNANDEZ; EXHIBIT "A"; CERTFIICATE OF SERVICE |
| RAIED J. ALFOUADI; DOE DEFENDANTS 1-20, DOE CORPORATIONS, 1-20, DOE GOVERNMENT AGENCIES 1-20, DOE PARTNERSHIPS 1-20, | Trial Judge:   Honorable Jill A. Otake |
| Defendants. | Trial Date:    October 20, 2025 |

**Exhibit "A"**

**DEFENDANT RAIED J. ALFOUADI'S NOTICE OF SUBMISSION OF HIS
COUNTERDESIGNATED TRANSCRIPTS OF CORY FERNANDEZ**

Defendant RAIED J. ALFOUADI ("Defendant"), by and through his
undersigned counsel, Myhre & Storm, and in accordance with the Court's Order dated
September 11, 2025 [ECF No. 249], hereby submits his highlighted counter designations
of the transcript of the deposition of Cory Fernandez.

| PAGE | LINES |
|------|-------|
| 4 | 11-25 |
| 7 | 25 |
| 8 | 1-3 |
| 13 | 21-25 |
| 15 | 5-15 |
| 18 | 3-6, only if testimony set forth on p.17 lines 13-25, p.18 lines 1-2 are admitted |
| 20 | 7-9 |
| 22 | 19-25 |
| 23 | 1-4, 15 (starting with "I'm just trying to figure") - 22 |
| 24 | 5-14 |
| 26 | 19-25 |
| 27 | 14-18 |
| 52 | 7-21 |
| 53 | 1-3 |
| 55 | 8-20 |
| 56 | 4-5, 7-11 |
| 57 | 14-25 |
| 58 | 1, 13-25 |

| 59 | 1-7  |
|----|------|
| 77 | 5-17 |

DATED:  Honolulu, Hawaii, September 12, 2025.

/s/ James V. Myhre
JAMES V. MYHRE
BRENT K. WILSON
Attorneys for Defendant
RAIED J. ALFOUADI

# Exhibit "A"

1

```
1                  IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF HAWAII

3     DAVID DEMAREST and GREEN       ) Civil No.
      MOUNTAIN MYCOSYSTEMS LLC,      ) 22-CV-00064 JAO KJM
4                                    )
              Plaintiffs,            )
5                                    )
         v.                          )
6                                    )
      RAIED J. ALFOUADI; UNNAMED     )
7     SAILING VESSEL in rem, Hull    )
      No. HA 6874 H; DOE             )
8     DEFENDANTS 1-20, DOE           )
      CORPORATIONS 1-20, DOE         )
9     GOVERNMENT AGENCIES 1-20,      )
      DOE PARTNERSHIPS 1-20,         )
10                                   )
              Defendants.            )
11                                   )
      _____    )
12

13

14                    ZOOM DEPOSITION OF

15                      CORY FERNANDEZ

16       Taken on behalf of the Plaintiffs via Zoom,

17   commencing at 1:00 p.m. on Wednesday, March 20, 2024,

18   pursuant to Notice.

19

20

21

22

23   Reported by:

24   KATE McALPINE, RPR, CSR NO. 537
     Certified Shorthand Reporter

25
```

Exhibit "A"

```
 1                        CORY FERNANDEZ,

 2     the witness hereinbefore named, being first duly

 3     cautioned and sworn to testify the truth, the whole

 4     truth, and nothing but the truth, testified under oath

 5     as follows:

 6                     DIRECT EXAMINATION

 7     BY MR. WASHKOWITZ:

 8         Q.   Good afternoon, Mr. Fernandez.  My name is

 9     Jared Washkowitz.  I'm the attorney for a plaintiff in

10     a lawsuit that's pending in federal court.

11              Let's start by having you state your full name

12     for the record.

13         A.   My name is Corey Alan Fernandez.

14         Q.   And are you currently an officer with DOCARE

15     branch of DLNR?

16         A.   Yes, I am, with the Maui branch.

17         Q.   Okay.  And you reside in Maui as well?

18         A.   Yes, I do.

19         Q.   And were you with the DOCARE Maui branch back

20     in 2022 as well?

21         A.   Yes.

22         Q.   And -- and how long have you worked in that

23     position?

24         A.   I've been with DOCARE for about four years and

25     some change.
```

1      If I'm asking you to tell me how long is the

2  desk in my office, that would be a pure guess because

3  you've never been to my office or you -- you don't

4  know.

5      So, basically, estimating is -- is, you know,

6  based on past information that you have, or as a

7  guess, you don't have any basis, really.  Do you

8  understand that?

9      A.   I do.

10     Q.   Okay.  You will have the chance, if you want

11 to review your deposition transcript when the

12 deposition is completed and transcribed.  Normally

13 we'll -- if -- if you make substantive changes to the

14 deposition transcript we can comment on that at trial.

15 For example, if it's like a traffic case and you

16 testified at the deposition that the traffic light was

17 red, and then when you reviewed your deposition you

18 changed it and said it was green, that's a substantive

19 change and we can comment at trial and ask why you

20 changed your answer in a substantive way.

21     So the point is, try to give your best and

22 most accurate testimony today at the deposition.  Do

23 you understand that?

24     A.   Yes, sir.

25     Q.   Do you -- do you recall being on the scene of

 1    a salvage or a boat removal operation back at Mala

 2    Wharf in January 2022?

 3        A.    I do.

 4        Q.    Okay.  And that's what we're here to talk

 5    about for the most part today.  Is there anything that

 6    would prevent you from testifying about that today,

 7    any reason why you can't give your best testimony as

 8    to that incident?

 9        A.    No.

10        Q.    Other than the fact --

11        A.    Other than the short notice.

12        Q.    Right.

13        A.    Yeah, other than the short notice and --

14    (audio distortion.)

15        Q.    Right.  And thank you for making the time to

16    accommodate us.  Appreciate that.  Have you -- I know

17    it's pretty short, but have you had a chance to review

18    any of your notes or documents related to that

19    incident back in January 2022 prior to today?

20        A.    I was just able to review my report and all

21    the attachments that were on the report.

22        Q.    Okay.  And do you-- do you have a copy of that

23    report that you're able to --

24        A.    I -- I -- I do.

25        Q.    Okay.  And when -- when was that report

1    know.

2         Q.   Do you recall how many -- well, I asked you

3    earlier if -- if you recall the general incident back

4    in January of 2022 involving a vessel that was washed

5    up by the Mala Wharf, right?  You remember that?

6         A.   Yes, it was a grounded vessel.

7         Q.   Do you -- do you remember how many -- on how

8    many separate occasions you attended the scene of

9    that, the vessel aground?

10        A.   That specific scene, how many times I went

11   there?

12        Q.   Yeah.  Like, was it just -- you just went one

13   day, or did you go back multiple days?  Do you

14   remember?

15        A.   I don't.

16        Q.   You don't recall?

17        A.   I don't -- I don't know.

18        Q.   But you -- you definitely were there at least

19   one day, correct?

20        A.   Correct.

21        Q.   Do you remember what caused you or how you

22   became notified of the situation in the first place?

23        A.   Yes.  I was assigned the case.

24        Q.   Who assigned you the case?

25        A.   My lieutenant.

1    1925 hours.

2        Q.    What was the date?  Does it have a date on

3    your report?

4        A.    The date is -- yes.  1/2/2022.

5        Q.    And do you recall or -- either recall

6    independently or from referencing your report, what

7    happened when you got on the scene on January 2nd,

8    that first day?

9        A.    So I arrived on scene, I made checks of the

10   area, observed the vessel grounded at the scene, I

11   displayed the vessel.  I observed the vessel

12   displaying the registration number and current

13   registration decals.  I observed a big hole in the

14   hull of the vessel and debris surrounding the vessel

15   and that's --

16               MS. SWENSON:  Sorry, Officer.

17               I'm going to object here.  I don't want

18   Officer Fernandez just reading from his report.  In

19   his -- you know, you will have his report soon and it

20   speaks for itself.  I'd like his deposition to be from

21   his personal memory.

22               MR. MYHRE:  But if his report refreshes

23   his memory, I mean he can talk about the --

24               MS. SWENSON:  Yeah, he can look at it but

25   he's reading from it right now.

**RALPH ROSENBERG COURT REPORTERS, INC.**
**Honolulu, HI   (808) 524-2090**

1   the vessel's current condition at the time of the

2   grounding, it was a complete loss of the vessel.

3        Q.   Was Mr. Alfouadi, Raied, was he present when

4   you had that conversation with Mr. Demarest about him

5   being the salver -- salvager?

6        A.   I don't remember.

7        Q.   On that first night you were -- actually, let

8   me just ask you this:  Looking at your report to

9   refresh your recollection, can you tell us if you were

10  on the scene of that operation at any other date other

11  than January 2nd?

12       A.   Yes.  Per my report, it shows two other dates.

13       Q.   What dates were those?

14       A.   January 5th of 2022 and January 1st

15  of -- January 7th of 2022.

16       Q.   Okay.  So go back to January 2, 2022, that's

17  the first day that you came on the scene.  Did -- when

18  Mr. Demarest explained that he was the salvager,

19  did -- did you ask any more detail about it or any

20  questions about what he planned to do?

21       A.   I don't remember.

22       Q.   Okay.  Would -- would looking at your report

23  refresh your recollection as to that?

24       A.   No.

25       Q.   Do you recall any specific conversations with

```
 1        A.   I don't -- go ahead.

 2                  THE WITNESS:  Danica, am I good to

 3   answer?

 4                  MS. SWENSON:  Yes.

 5        A.   Okay.  I don't remember.

 6   BY MR. WASHKOWITZ:

 7        Q.   How long did you stay on the scene on

 8   January 2nd?

 9        A.   I don't remember.

10        Q.   Do you have any recollection or does your

11   report reflect that at any time on January 2nd

12   Mr. Alfouadi objected or opposed Mr. Demarest's

13   statement that he was the salvager?

14                  MR. MYHRE:  I'm going to object the

15   question that it assumes facts not in evidence that

16   Mr. Alfouadi ever even heard him say that.

17   BY MR. WASHKOWITZ:

18        Q.   You can answer the question.

19        A.   Can you repeat the question?

20        Q.   Do you have any recollection of Mr. Alfouadi

21   on January 2nd opposing Mr. Demarest's statement that

22   he was the salvager?

23                  MR. MYHRE:  I'm going to again object to

24   the question assuming facts not in evidence that

25   Mr. Alfouadi had ever heard Mr. Demarest make such a
```

```
 1    the scene, did you take any notes on that day?

 2         A.   Yes.

 3         Q.   On January 2nd when you attended the scene,

 4    did you take any photographs that day, if you

 5    remember?

 6         A.   Well, I'm looking at my photo report and I

 7    have some pictures of the vessel at night.

 8         Q.   Does that help you identify if you took those

 9    pictures either on January 2nd, January 5th, or

10    January 7th?

11         A.   If I answer, I'll be guessing, so I don't

12    remember.

13         Q.   Okay.  And then, what -- what times -- do your

14    notes say what times you were at the vessel site on

15    January 5th and January 7th?

16         A.   I don't remember.  I don't have my -- that

17    notes in front of me.  I believe there was -- yeah, I

18    don't have that notes in front of me.

19         Q.   Does your report indicate what times you were

20    with the vessel on January 5th or January 7th?

21         A.   On January 5th and January 7th?

22         Q.   Yeah.

23         A.   Okay.  So on January 5th -- on January 5th at

24    0700 hours and January 7th at 0830 hours, and that's

25    approximate for both times.
```

1    Q.   Understood.   Do the notes or reports say when

2    you left or just when you got there?

3    A.   When I got there.

4    Q.   Do you recall how long you were -- you stayed

5    onsite each time?  Was it all day or just --

6    A.   I don't remember.

7    Q.   Do you have any estimate of how long you would

8    have been onsite on January 5th or January 7th?  Was

9    it like half a day or ten minutes or a couple hours?

10                   MS. SWENSON:  Objection.  Asked and

11   answered.

12   BY MR. WASHKOWITZ:

13   Q.   Yeah, I -- I'm not clear on your answer yet.

14   You can estimate.  I know -- I'm not going to hold you

15   to the exact.  I'm just trying to figure out if, on

16   January 5th, were you there.  You arrived at

17   approximately 0700.  Were you there all day or were

18   you just there for like ten minutes or --

19   A.   I was not there all day.  I believe less than

20   an hour.  If I'm estimating I would say even less than

21   30 minutes.  I was just there to check on the vessel,

22   salvaging, see how it's going, and then I left.

23                   THE STENOGRAPHER:  Part of that answer

24   cut out.  I'm sorry, can I have the -- the witness

25   repeat his answer, please.

24

```
 1       A.   So I said less than an hour.  And then I said
 2   even less than 30 minutes.  My task was to go there,
 3   check on the vessel, the salvaging, and leave.
 4   MR. WASHKOWITZ:
 5       Q.   And then same question for January 7th.  You
 6   say approximately you got there 0830.  0830.  Do you
 7   recall if you were there the same, like an hour, half
 8   an hour, or was it longer?
 9       A.   About the same.
10       Q.   Okay.  And then other than January 2nd,
11   January 5th, and January 7th, those were the only
12   three times that you were actually there on the scene
13   with the vessel, correct?
14       A.   Per my report, yes.
15       Q.   And then on -- on January 2nd -- that first
16   day you arrived and you -- you spoke with Mr. Alfouadi
17   and Mr. Demarest, did -- did you do anything else
18   other than observe the situation and -- and talk to
19   Mr. Demarest and Mr. Alfouadi that night?
20               MS. SWENSON:  Object.  Vagueness.
21               You can still answer if you can, Cory.
22       A.   Okay.  So it says that I contacted DOBOR.  No
23   one answered so I left a message.
24   BY MR. WASHKOWITZ:
25       Q.   And is that --
```

1    A.    Yes.

2    Q.    And then it says manager director, do you know

3    what you meant by that?

4    A.    Well, speaking from my notes it looks like

5    David and his phone number, there's an arrow, and in

6    my report it also says that he's salvaging the company

7    through -- he's salvaging the vessel through his

8    company Green Mountain Mycosystems, so...

9    Q.    Okay.  And then down below it says

10   Raied Alfouadi and below that it says start salvage.

11   Is that what that says, start salvage?

12   A.    Yes.

13   Q.    Okay.  And then can you -- can you just run

14   through what these other notes mean on the record?

15   A.    So below start salvage?  Sorry, Jared, your

16   talking about below start salvage?

17   Q.    Yeah, yeah.

18   A.    Okay.

19   Q.    Start it off where it says:  Took off all

20   hazmat.

21   A.    Okay.  So, took all hazmat, that's just pretty

22   much asking what kinds of hazmat's on there and they

23   took it all off.  That's there two gel batteries,

24   they're fully screwed or fully sealed.  No gas on

25   boat.  WD-40, five gallon, that's all the hazmat that

1    was on the container -- or that was on the vessel.

2         And:  Below happened at 3:30 p.m., anchored in

3    front of Mala Restaurant.  I believe that says, I'm

4    not too sure.

5         And then:  No one onboard, anchor line snapped

6    or out.  Waves/wind a factor.  Meaning that, yeah,

7    waves and wind was a factor in the vessel running

8    aground.

9    Q.  And what -- do -- do you remember when you

10   responded to the scene on January 2nd what the wind

11   and waves were like at that time?

12   A.  I don't but I couldn't see the waves, it was

13   dark.  The wind I don't remember.

14   Q.  Okay.  And these notes were -- did you make

15   these notes while you were on the scene there with the

16   boat or after the fact?

17   A.  I'd be guessing at this point, so I don't

18   remember.

19   Q.  Do you know who took this picture of your

20   notes?

21   A.  I don't remember.  I'm sorry, hold on.  My

22   phone battery looks like it's dying.

23   Q.  No problem.

24        MS. SWENSON:  Do you have a charger near

25   you, Cory?

```
 1    questions for --

 2              MR. MYHRE:  I do.

 3              MR. WASHKOWITZ:  Okay.  So I'll turn it

 4    over to you, Jim, and then I'll review my notes while

 5    you're asking your questions.

 6              MR. MYHRE:  Yeah, I might need you to put

 7    up some of those exhibits, though, okay?

 8              MR. WASHKOWITZ:  Yep.  You just let me

 9    know which ones.

10                   CROSS-EXAMINATION

11    BY MR. MYHRE:

12       Q.   Officer Fernandez, my name is Jim Myhre.  I

13    represent Raied Alfouadi.  The defendant who is being

14    sued by Mr. Washkowitz's client, Mr. Demarest.  I do

15    have a few followup questions for you concerning your

16    investigation.

17              You had mentioned that you received a call on

18    January 2, 2022, from your lieutenant and were

19    dispatched down to Mala Wharf and you got there, I

20    believe you said at 7:00 p.m.  Is that correct?

21       A.   1900 hours, yes.

22       Q.   So that would be 7:00 p.m., correct?  1800 is

23    6:00 p.m. --

24       A.   I'm just referencing my report, so I put 1900

25    hours.  So, yeah, that's 7:00 p.m.
```

1     Q.    Okay.   So this is January 2, 2022, so by the

2     time you arrived it was already dark; is that correct?

3     A.    Yes.

4     Q.    Okay.

5     A.    I believe so.

6     Q.    And in anywhere in your report did you

7     document on January 2, 2022, what the weather

8     conditions were at that time?

9               MR. WASHKOWITZ:  I'm gonna object to the

10    form.  The report speaks for itself.

11    BY MR. MYHRE:

12    Q.    When I say at that time, when you arrived at

13    the wharf.

14              MS. SWENSON:  Officer, I can't tell if

15    you're frozen or reading.

16              MR. WASHKOWITZ:  Oh, I think we lost him.

17              MS. SWENSON:  The record can reflect that

18    Cory Fernandez's Zoom disappeared for a second and now

19    it's back.

20    A.    Sorry.  Can you hear me?

21              MS. SWENSON:  Yes.

22    A.    Okay.  Sorry.  I got like a temperature alert

23    so I had to wait for a little bit, yeah.  Go ahead.

24    BY MR. MYHRE:

25    Q.    Okay.  That's quite all right.  Those things

```
1    you arrived about 7:00 p.m., is it -- was it dark or

2    was it not dark?

3         A.   According to my photos it looks dark, but my

4    memory -- I don't remember.

5         Q.   Okay.

6         A.   But I arrived at 7:25 or 7:25 p.m., I got the

7    call at 7:00.

8         Q.   Okay.  So you arrived at 7:25, my apologies.

9    So, on January 2, you arrived at 7:25 p.m., it's

10   likely dark out at that time, correct?

11        A.   Correct.  According to my phone.

12        Q.   And so you took photographs, these first four

13   photographs indicate that the -- that it's dark out.

14   You see the -- the sailboat there, and there appears

15   to be some chains or some ropes or something coming

16   from the boat onto the -- the rock jetty, correct?

17        A.   Correct.  I see it.

18        Q.   Okay.  And in looking at those photographs,

19   does it appear that the mast of the sailboat is no

20   longer there?

21             MS. SWENSON:  Objection.  Calls for

22   speculation.

23             But answer if you can, Cory.

24        A.   Okay.  So your question was if the mast

25   was -- the mast was no longer there?
```

**RALPH ROSENBERG COURT REPORTERS, INC.**
**Honolulu, HI   (808) 524-2090**

```
 1    BY MR. MYHRE:

 2        Q.   Correct.

 3             MR. WASHKOWITZ:   Join the objection.

 4        A.   Well, according to my photos, I don't see a

 5    mast.

 6    BY MR. MYHRE:

 7        Q.   Okay.   Fair enough, and it -- and there was

 8    some chains or some ropes up onto the rock jetty and

 9    it looks like the boat was secured in some fashion; is

10    that correct?

11        A.   Yes.

12        Q.   Now, if you could, and I don't want to

13    misstate a time, so when you went to the wharf the

14    second day, on January 5, can you just confirm for me

15    what time it was you arrived at the wharf on that

16    date?

17             MS. SWENSON:   Objection.  Asked and

18    answered.

19             MR. WASHKOWITZ:   Objection.  Asked and

20    answered.

21             MR. MYHRE:   Well, I never asked and

22    answered the question.  I just want to get

23    confirmation of it.

24             MS. SWENSON:   Well it counts regardless

25    of which counsel asked, I believe.
```

```
 1                    MR. MYHRE:  Well, I think you're wrong.
 2    I can clarify to setup a question.
 3    BY MR. MYHRE:
 4       Q.  So what time was it that you arrived there?
 5                    THE WITNESS:  Danica, can I answer?
 6                    MS. SWENSON:  Yeah, if you know.
 7       A.  Okay.  According to my report at approximately
 8    0700 hours.
 9    BY MR. MYHRE:
10       Q.  Okay.
11                    MR. MYHRE:  And, Jared, if you could flip
12    down to the next page.
13    BY MR. MYHRE:
14       Q.  You see a series of photographs there, and
15    with regard to Photograph 5, what were you trying to
16    document with regard to Photograph 5?
17       A.  I don't remember.  Just debris from the
18    vessel.
19       Q.  In looking at Photograph 5 and comparing it to
20    the photographs you took on the evening of
21    January 2nd, it looks like sections of the vessel have
22    been removed; is that correct?
23       A.  It looks like it through the photos.
24       Q.  And also in Photograph Number 8, that appears
25    to be a photograph of a dumpster with debris in it?
```

**RALPH ROSENBERG COURT REPORTERS, INC.**
**Honolulu, HI   (808) 524-2090**

1      A.   Correct, that's what it looks like.

2      Q.   And what was the purpose of taking that

3  photograph?  Was it just to document that the debris

4  had been deposited into a dumpster?

5      A.   I don't remember.  Probably to some -- to that

6  kind of effect possibly.  I don't remember.

7      Q.   Okay.

8           MR. MYHRE:  And, Jared, if you can go

9  back to the third page of the report.  The third page,

10  the third page.

11          MR. WASHKOWITZ:  Oh, let me see.  1, 2...

12  BY MR. MYHRE:

13     Q.   And if you look at the entry on the bottom of

14  the third page, January 7, 2022, says approximately

15  0830 hours, that's 8:30 a.m., correct?

16     A.   Correct.

17     Q.   You made a check at the vessel, correct?

18     A.   Correct.

19     Q.   And, at that point in time, Demarest told you

20  that the majority of the vessel debris was out of the

21  ocean and the only thing in the ocean was the keel and

22  an outboard motor, correct?

23     A.   Correct.

24     Q.   And just so I understand what you're saying

25  there, the entirety of the boat had been removed and

 1  the only thing that was left was the keel and the

 2  outboard motor, correct?

 3      A.   Well, that's not what I'm saying.  I mean,

 4  that's what Demarest told me.

 5      Q.   Okay.  But that's what you documented

 6  Mr. Demarest saying?

 7      A.   Yes.

 8      Q.   Okay.  Based upon your observations at the

 9  scene that day on January 7, 2022, do you have any

10  information that you can recall that would indicate

11  what Mr. Demarest told you on that occasion was not

12  correct?

13              MR. WASHKOWITZ:  Object to the form.

14      A.   I don't remember.

15              MR. MYHRE:  Now, Jared, go down to the

16  third page of photographs.

17  BY MR. MYHRE:

18      Q.   If you look at the third page of the

19  photographs, you see photographs 9 and 10, correct?

20      A.   Correct.

21      Q.   Are you familiar with the place called Lahaina

22  Welding?

23      A.   Lahaina Welding?

24      Q.   Yes.  It's right behind the wharf?

25      A.   I'm not familiar.  I've heard about it but I'm

```
 1   point it's calm, but I don't know if there's sets
 2   coming in, or if it's just a break in sets, so I -- I
 3   don't know.
 4   BY MR. MYHRE:
 5       Q.   Okay.   All right.   On either of the three days
 6   that you went out to Mala Wharf, January 2nd,
 7   January 5th, or January 7th, did you ever document any
 8   damage to any reef, coral, due to the vessel?
 9                   MR. WASHKOWITZ:   Object to the form.
10   Lacks foundation.
11                   You can answer.
12                   THE WITNESS:   I can answer?   Okay.
13       A.   According to my report, no.
14   BY MR. MYHRE:
15       Q.   Okay.   Did you ever document any damage caused
16   by the vessel to Mala Wharf?
17       A.   No.
18       Q.   Okay.
19       A.   In the report, no.
20       Q.   All right.   Those are all the questions that I
21   have for you.   Thank you.
22                   MR. WASHKOWITZ:   I don't have any further
23   questions.
24                   MS. SWENSON:   I have a few clarifying
25   questions I wanted to go through.
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC, | ) ) ) | CASE NO. 22-CV-00064-JAO-KJM (In Admiralty) |
| | ) | CERTIFICATE OF SERVICE |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| RAIED J. ALFOUADI; DOE DEFENDANTS 1-20, DOE CORPORATIONS, 1-20, DOE GOVERNMENT AGENCIES 1-20, DOE PARTNERSHIPS 1-20, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was

duly served upon the following party via CM/ECF on September 12, 2025.

KEVIN W. HERRING, ESQ.
kherring@awlaw.com
RYAN M. TOYOMURA, ESQ.
rtoyomura@awlaw.com
First Hawaiian Center
999 Bishop Street, Suite 1400
Honolulu, Hawaii 96813


GLENN KATON, ESQ. (*Pro Hac Vice*)
385 Grand Ave. Suite 200
Oakland, CA 94610

Attorneys for Plaintiff
GREEN MOUNTAIN MYCOSYSTEMS

DATED:  Honolulu, Hawaii, September 12, 2025.

/s/ James V. Myhre
JAMES V. MYHRE
BRENT K. WILSON
Attorneys for Defendant
RAIED J. ALFOUADI