EXHIBIT "B"

NO. 26-3128

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

GREEN MOUNTAIN MYCOSYSTEMS LLC, et al.,
Plaintiff-Appellant

vs.

RAIED J. ALFOUADI, et al.,
Defendant-Appellee

_____

**GREEN MOUNTAIN MYCOSYSTEMS, LLC'S STATEMENT
PURSUANT TO THE COURT'S JUNE 10, 2026 ORDER**

_____

Appeal from The United States District Court for the District of Hawaii

CIVIL 1:22-cv-00064-JAO-KJM

_____

ASHFORD & WRISTON
A Limited Liability Law Partnership LLP
KEVIN W. HERRING     6722-0
kherring@awlaw.com
RYAN M. TOYOMURA        11300-0
rtoyomura@awlaw.com
First Hawaiian Center
999 Bishop Street, Suite 1400
Honolulu, Hawaii  96813
Telephone:  (808) 539-0400

EXHIBIT "B"

KATON.LAW
GLENN KATON
gkaton@katon.law
385 Grand Avenue, Suite 200
Oakland, California  94610
Telephone:  (510) 463-3350
Facsimile:  (510) 463-3349

ATTORNEYS FOR PLAINTIFF-
APPELLANT GREEN MOUNTAIN
MYCOSYSTEMS, LLC

## Table of Contents

I.      Introduction....................................................................................................1

II.     Facts ................................................................................................................2

III.    Discussion........................................................................................................4

        A.      The Magistrate has authority to decide nondispositive, postjudgment
                motions. .............................................................................................4

        B.      The Motion for Extension of Time was a Nondispositive Motion .......7

IV.     If Circuit Court Finds the Magistrate Did Not Have the Authority to
        Grant the Extension of Time, the Matter Should be Remanded to the
        District Court ...................................................................................................9

V.      Conclusion .....................................................................................................10

## Table of Authorities

**Cases**

*Ashker v. Newsom*, 968 F.3d 975 (9th Cir. 2020)......................................................10

*Columbia Record Prods. v. Hot Wax Records, Inc.*, 966 F.2d 515 (9th Cir. 1992)....9

*Erum v. Cnty. of Kauai*, No. CIV.08-00113SOM-BMK, 2008 WL 2598138 (D. Haw. June 30, 2008)..................................................................................................5

*Est. of Conners by Meredith v. O'Connor*, 6 F.3d 656 (9th Cir. 1993) ....................10

*Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) .............................................5, 8

*In Est. of Conners by Meredith v. O'Connor*, 6 F.3d 656 (9th Cir. 1993).................6

*King v. Ionization Int'l, Inc., 825 F.2d 1180 (7th Cir.1987)* .......................................6

*Maisonville v. F2 Am., Inc.*, 902 F.2d 746 (9th Cir. 1990).........................................7

*McKeever v. Block*, 932 F.2d 795 (9th Cir.1991).......................................................5

*Mitchell v. Valenzuela*, 791 F.3d 1166 (9th Cir. 2015)..............................................8

*United Indep. Ins. Agencies, Inc. v. Bank of Honolulu*, 963 F.2d 380 (9th Cir. 1992)..................................................................................................5

*United States v. Rivera-Guerrero*, 377 F.3d 1064 (9th Cir. 2004)...........................10

*United States v. Saunders*, 641 F.2d 659 (9th Cir. 1980)...........................................6

**Other Authorities**

28 U.S.C. § 636(b)(1)(A).........................................................................................5, 8

28 U.S.C. § 636(b)(3)...............................................................................................1, 5

**Rules**

28 U.S.C. § 636(c) ...............................................................................................5

Fed. R. Civ. P. Rule 72 .................................................................... 5, 7, 9

Fed. R. Civ. P. Rule 73 ........................................................................5

Federal Rules of Appellate Procedure, Rule 4 ..........................................2

Local Rule 73.1(c)............................................................... 1, 2, 4

Plaintiff/Appellant GREEN MOUNTAIN MYCOSYSTEMS, LLC, ("GMM") by and through its counsel Ashford & Wriston, LLP and Katon.Law, respectfully submits this Memorandum in Response to the Court's Order filed on June 10, 2026 ("Order"). [Ninth Circuit Court of Appeal ECF 7.1.]

## I. Introduction

The Magistrate Judge in the case below had the authority to grant GMM's motion to extend time to file a notice of appeal [GMM's Motion for Extension of Time to File Notice of Appeal (the "Motion for Extension") Dist. Ct. ECF ("ECF") No. 288][1]. The Local Rules of the District Court provide that a magistrate judge may, even without the consent of the parties, "[e]xercise general supervision of the civil calendars" and "[p]erform any additional duty not inconsistent with the Constitution and laws of the United States." LR73.1(c). That rule tracks the catchall provision for Magistrate Judge powers under 28 U.S.C. § 636(b)(3).

GMM sought the extension of time to allow the parties to pursue settlement discussions, initiated by Defendant/Appellee Raied J. Alfouadi ("Alfouadi"), two days before the deadline to file a notice of appeal. GMM specifically requested expedited action on the motion to preserve its appeal rights, knowing that if the

---

[1] A true and correct copy of the Motion for Extension is attached as Exhibit "A-1"

Motion for Extension was not granted or acted on by the filing deadline, GMM would file its notice of appeal. Importantly, if the settlement discussions were productive, it would not have been necessary to incur the time and expense associated with filing a notice of appeal. The Magistrate Judge was involved in this process because he had been active in assisting the parties with settlement conferences throughout the case. *See* LR73.1(c)(2).

## II.    Facts

On March 11, 2026, the District Court entered its "Findings of Fact and Conclusions of Law," ("FOF/COL") [ECF 283][2] and "Judgment In A Civil Case" [ECF 284][3].

Under Rule 4 of the Federal Rules of Appellate Procedure ("FRAP"), the 30-day deadline to file a notice of appeal was April 10, 2026. *See* FRAP Rule 4(a)(1)(A). On April 2, 2026, Alfouadi's counsel contacted GMM's counsel and conveyed a preliminary settlement proposal to resolve all matters related to this case, including a potential appeal. [*See* Motion for Extension at pdf. 11 at ¶ 3.]

On April 6, 2026, counsel for GMM and Alfouadi met again to discuss the settlement proposal. Given that the settlement discussion was moving in a positive

---

[2] A true and correct copy of the FOF/COL is attached as Exhibit "A".

[3] A true and correct copy of the Judgment In A Civil Case is attached as Exhibit "B".

direction, GMM proposed an extension of time to file a notice of appeal to preserve its right to appeal the underlying orders and judgment, pending the outcome of the good-faith settlement discussions. [*See id.* at ¶ 5.]

GMM filed the Motion for Extension on April 8, two days before the deadline to file its notice of appeal. [ECF 288.] If the motion was denied or not acted upon prior to the deadline, GMM would still have been able to file a notice of appeal prior to the deadline. The next day, Alfouadi filed his objection to the Motion for Extension. [ECF 289.][4] That same day, the Magistrate entered his Order extending time ("Order Extending Time") extending the deadline to file the notice of appeal to May 11, 2026. [ECF 290.][5] Neither the Court nor Alfouadi raised any issues or concerns regarding the authority of the Magistrate to act. Additionally, Alfouadi did not object to the Order Extending Time.

On April 10, 2026, pursuant to the parties' request, the Magistrate entered an Order setting a confidential settlement conference for April 20, 2026. [ECF 291.][6] Notwithstanding everyone's best efforts, no settlement was reached. [ECF 292.][7]

---

[4] A true and correct copy of the Objection is attached as Exhibit "D".

[5] A true and correct copy of the Order Extending Time is attached as Exhibit "E".

[6] A true and correct copy of the Order setting a confidential settlement conference is attached as Exhibit "F".

[7] A true and correct copy of the Minutes is attached as Exhibit "G".

3

On May 11, 2026, GMM filed its Notice of Appeal pursuant to the extended

filing deadline. [ECF 294.][8]

## III.   Discussion

### A.   *The Magistrate has authority to decide nondispositive, postjudgment motions.*

The statute governing the jurisdiction and power of magistrate judges

provides that a "magistrate judge may be assigned such additional duties as are not

inconsistent with the Constitution and laws of the United States." 28 U.S.C.

§ 636(b)(3). Tracking that statute, the Local Rule of the District Court provides that

a magistrate judge may, even without the consent of the parties, "[e]xercise general

supervision of the civil calendars" and "[p]erform any additional duty not

inconsistent with the Constitution and laws of the United States." LR73.1(c).

The broad provisions of that statute and local rule are not without limits. For

example, without the consent of the parties, a magistrate judge is limited to making

recommendations to Article III judges for final disposition on all dispositive

matters. 28 U.S.C. § 636(c); Fed. R. Civ. P. 72; *see*; *United Indep. Ins. Agencies,*

*Inc. v. Bank of Honolulu*, 963 F.2d 380 (9th Cir. 1992) ("[W]ith respect to

dispositive matters, a [M]agistrate [Judge] is only permitted to make

recommendations for final disposition by an Article III judge who reviews his

---

[8] A true and correct copy of the Notice of Appeal is attached as Exhibit "H".

4

findings and recommendation, *if objected to*, de novo." *McKeever v. Block*, 932

F.2d 795, 798 (9th Cir.1991)" (emphasis and brackets in original)).

The statute further specifies that a magistrate judge may, for example, hear

and decide nondispositive pretrial matters, conduct evidentiary hearings, submit

proposed findings of fact and recommendations for disposition of select motions,

and to serve as special masters. 28 U.S.C. § 636(b); *Fed. R. Civ. P.* Rule 72; *Flam*

*v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) ("The matters listed in 28 U.S.C.

§ 636(b)(1)(A) are dispositive while, *in general*, other matters are non-dispositive."

(emphasis in original)).

This Court has previously observed that § 636(b)(3)'s catchall provision

could also apply to post-judgment proceedings.[9] In *Est. of Conners by Meredith v.*

*O'Connor*, 6 F.3d 656, 659, n. 2 (9th Cir. 1993), the Court found that "no provision

expressly authorizes the judge to assign a magistrate to post-judgment proceedings,

although we can think of no good reason not to allow such assignments and the

statute does have a catch-all section: A magistrate may be assigned such additional

duties as are not inconsistent with the Constitution and laws of the United States;

---

[9] Hawaii District Courts have held that § 636(b)(3) authorizes a magistrate judge to decide a motion for sanctions which was "neither a nondispositive pretrial matter nor dispositive of a claim or defense raised in a pleading." *See Erum v. Cnty. of Kauai*, No. CIV.08-00113SOM-BMK, 2008 WL 2598138, at *3 (D. Haw. June 30, 2008) (citing *King v. Ionization Int'l, Inc.,* 825 F.2d 1180, 1185 (7th Cir.1987)).

5

reasoning therefore that a magistrate could issue an order in a post-judgment proceeding that would be appealable to the district judge." *Id*. (citing *King v. Ionization Int'l, Inc.,* 825 F.2d 1180, 1185 (7th Cir.1987) (cleaned up); *United States v. Saunders*, 641 F.2d 659, 664, n.1 (9th Cir. 1980) (noting that the magistrate judge is delegated additional duties under a grant of authority pursuant to the catchall provision 28 U.S.C. § 636(b)(3))).

The Fifth Circuit has specifically held that a magistrate judge had the authority to conduct and make orders related to a nondispositive, postjudgment discovery motion in a collection proceeding under 28 U.S.C. § 636(b)(3)'s catchall provision. *See F.D.I.C. v. LeGrand*, 43 F.3d 163, 167–68 (5th Cir. 1995). In analyzing the legislative history of the statute, the court observed that the additional duties under § 636(b)(3) need only "reasonably relate to the existing statutory scheme." *Id*. Therefore, since the postjudgment discovery motions were,

> the types of nondispositive discovery motions specifically authorized for pretrial determination by a magistrate under § 636(b)(1)(A), jurisdiction to decide these types of motions *postjudgment* bears a reasonable relationship to the existing statutory scheme and should be found under § 636(b)(3)."

*See id.* (original emphasis).

Similarly, the postjudgment, nondispositive order extending time in this case bears a reasonable relationship to the magistrate's authority to "Exercise general supervision of the civil calendars, conduct calendar and status calls, and determine motions to expedite or postpone the trial of cases for the district judge[,]"

6

"[c]onduct . . . settlement conferences[,]" "[p]erform any additional duty not inconsistent with the Constitution and laws of the United States" under LR73.1(c)(1), (c)(2), (c)(10), which is consistent with the catchall section § 636(b)(3).

Therefore, the Magistrate's authority to decide the postjudgment motion for extension of time should be found under § 636(b)(3).

### B.     *The Motion for Extension of Time was a nondispositive motion*

The Order Extending Time was not dispositive of any claims or defenses in the case. GMM moved for the extension two days before the 30-day deadline and was fully prepared to timely file its notice of appeal had the trial court denied the motion to extend time or not ruled on it by the deadline.

Federal Rules of Civil Procedure ("FRCP") Rule 72(a) defines nondispositive matters as those that are not dispositive of a party's claim or defense. *See Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747 (9th Cir. 1990) ("Rule 72(a) defines non-dispositive matters as those 'pretrial matter[s] not dispositive of a claim or defense of a party.'"). "Dispositive matters are those listed in section 636(b)(1)(A), as well as "analogous" matters."[10] *Mitchell v. Valenzuela*, 791 F.3d

---

[10] The statute specifies the following dispositive motions "for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss

1166, 1168 (9th Cir. 2015) (citations omitted). "The matters listed in 28 U.S.C. § 636(b)(1)(A) are dispositive while, *in general*, other matters are non-dispositive." *Flam*, 788 F.3d at 1046 (emphasis in original). To determine whether a motion is dispositive, this Court uses a functional approach that looks at the effect of the motion to determine whether it is properly characterized as dispositive or non-dispositive of a claim or defense of a party. *Mitchell*, 791 F.3d at 1168-69. (citation omitted).

The *Mitchell* case involved a motion to stay a habeas corpus petition so the petitioner could exhaust some of his claims in state court. *Id*. at 1167. This Court noted that "this type of motion is generally (but not always) dispositive as to the unexhausted claims." *Id*. Here, by sharp contrast, GMM's timely motion to extend time to file notice of appeal was not dispositive of any of its claims or Alfouadi's defenses. The motion is plainly not among those specified in § 636(b)(1)(A), and it is not in any way analogous to those motions.

This Court's Order questioning whether the Magistrate Judge in this case had the authority to grant GMM's motion for extension of time cites *Columbia Record Prods. v. Hot Wax Records, Inc.*, 966 F.2d 515, 516-17 (9th Cir. 1992) (holding that absent consent, a federal magistrate judge lacks authority to render a

---

for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A).

8

post-judgment decision that has a dispositive effect on the parties). The key part of

the holding in *Columbia Record* that distinguishes it from this case is that the

magistrate judge's decision there had a dispositive effect on the parties, since it

allowed Columbia Record to enforce its judgment against a debtor's assets. *Id*. at

516. No such rights were at stake in GMM's motion for extension of time. GMM

filed its motion two days before the 30-day deadline of Federal Rule of Appellate

Procedure 4(a)(1)(A). If the trial court either denied the motion or did not rule on it

within two days, GMM would have filed its Notice of Appeal without affecting its

rights at all.

Accordingly, GMM's motion to extend time to file notice of appeal was

neither a dispositive motion under § 636(b)(1)(A) or FRCP Rule 72, nor was it

analogous to a motion enumerated in that statute because it did not dispose of a

claim or defense of any party.

## IV.    If Circuit Court Finds the Magistrate Did Not Have the Authority to Grant the Extension of Time, the Matter Should be Remanded to the District Court

If the Court finds that it lacks jurisdiction because the Magistrate did not

have the authority to enter the Order Extending Time, the matter should be

remanded with instructions to the District Court that the Order Extending Time be

deemed a report and recommendation. *See Ashker v. Newsom*, 968 F.3d 975, 985

(9th Cir. 2020) (holding that the Court could not reach the merits of the appeal

because the magistrate judge lacked authority to enter an order extending a consent decree, and thus, in the interest of judicial economy, it remanded the matter to the district court to consider construing the magistrate judge's extension order as a report and recommendation); *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1071 (9th Cir. 2004) ("In light of the accelerated nature of this appeal, we remand for the district court to apply de novo review to the magistrate judge's unauthorized order. By doing so, the district court should treat the magistrate judge's "order" as proposed findings and recommendations."); *see Est. of Conners by Meredith v. O'Connor*, 6 F.3d 656, 659–60 (9th Cir. 1993) ("Accordingly, because the magistrate did not have the authority to enter a final order, the defendants' notice of appeal from that order was a nullity and did not divest the district court of jurisdiction.").

## V.    Conclusion

Based on the foregoing, GMM respectfully requests that the Court find that it has jurisdiction to decide the appeal. If the Court finds that it does not have jurisdiction, it should remand the matter to the District Court with instructions to decide the Motion for Extension of Time.

DATED:  Honolulu, Hawaii; July 1, 2026.

/s/ Ryan M. Toyomura
KEVIN W. HERRING
RYAN M. TOYOMURA
Ashford & Wriston, LLLP

10

and

GLENN KATON
Katon.Law

Attorneys for Plaintiff-Appellant
GREEN MOUNTAIN MYCOSYSTEMS, LLC

11

## APPENDICES

Exhibit A – Dkt. 283 2026-03-11 Findings of Fact and Conclusions of Law

Exhibit A-1 – Dkt 288 2026-04-08 Motion for Extension of Time to File Notice of Appeal; Memorandum in Support; Declaration of Ryan M. Toyomura; Certificate of Service

Exhibit B – Dkt. 284 2026-03-11 Judgment in A Civil Case

Exhibit D – Dkt. 289 2026-04-09 OBJECTION to Plaintiffs Motion for Extension of Time to File Notice of Appeal [Ecf No. 288] Filed April 8, 2026; Declaration of Brent K. Wilson; COS

Exhibit E – Dkt 290 2026-04-09 EO_ Court GRANTS [288] Plaintiff's Motion for Extension of Time to File Notice of Appeal

Exhibit F – Dkt. 291 2026-04-10 EO Party requested Settlement Conf set for 4.20.26 at 11_00 via video conf

Exhibit G – Dkt. 292 2026-04-20 Minutes - No Settlement reached

Exhibit H – Dkt. 294 2026-05-11 NOTICE OF APPEAL as to [284] Clerk's Judgment by Green Mountain Mycosystems LLC.  Filing fee $ 605, receipt number AHIDC-3306099. Appeal Record due by 5_25_2026

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREEN MOUNTAIN MYCOSYSTEMS LLC, | CIV. NO. 22-00064 JAO-KJM |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| vs. | |
| RAIED J. ALFOUADI, | |
| Defendant. | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

During a storm in January 2022, Defendant Raied Alfouadi's ("Alfouadi" or "Defendant") sailboat came loose from its mooring and ran aground at Mala Wharf in Lahaina, Maui. In what remains of this case after its somewhat tortured procedural history, Plaintiff Green Mountain Mycosystems LLC ("GMM" or "Plaintiff")—managed by its sole member and Alfouadi's former friend, David Demarest ("Demarest")—seeks compensation for work allegedly performed to salvage the sailboat. GMM asserts four claims against Alfouadi for Breach of Oral Contract (Count I), Breach of Implied Contract (Count II), Quantum Meruit (Count III), and Maritime Pure Salvage Award (Count IV). *See generally* ECF No. 77.

The Court held a four-day bench trial on the matter from October 20–23, 2025, after which the parties submitted written closing arguments and proposed

EXHIBIT "A"

findings of fact and conclusions of law. *See* ECF Nos. 271–74. Based on the record, including the admissible testimony and exhibits, the Court finds in favor of Defendant and against Plaintiff on all counts.

The Court makes a couple observations before proceeding with its findings. First, as discussed below, and as the Court has already remarked, this case has been somewhat constrained and convoluted by Demarest's failure to respond to requests for admissions. The Court deemed those facts admitted against Demarest but not GMM. Nevertheless, as Demarest was GMM's manager and sole member, certain admissions of his effectively bind GMM as well.

Second, because the Court does not find either of the protagonists in this case—Demarest or Alfouadi—fully credible, it is difficult to say exactly what happened at Mala Wharf. Their stories are diametrically opposed in many ways, but neither story completely adds up, and the Court suspects it isn't getting the whole objective picture from the parties because of their egos and their animosity toward one another. Nevertheless, Plaintiff has the burden of proving its case and the Court found Alfouadi's version of events more plausible.

The Court suspects that what actually happened was that Demarest sensed an opportunity to make some money from Alfouadi's insurance company and swooped in to attempt the salvage operation without any agreement with Alfouadi. At first Demarest tried to include Alfouadi in his scheme, but eventually resorted

2

to deception to seize control of the operation. Alfouadi isn't above reproach either. He had his ego bruised during the January 6, 2022 argument with Demarest and stubbornly abandoned his work on the boat without ever trying to get to the bottom of what Demarest was proposing. Still, the Court finds that Demarest's deception and opportunism outweigh Alfouadi's pettiness and concludes that (1) GMM did not have any agreement with Alfouadi and that (2) Demarest's unclean hands preclude GMM from recovering for any work it completed absent an agreement.

## RELEVANT PROCEDURAL BACKGROUND

1. At the start of this case, Demarest and GMM were both plaintiffs, and initially filed suit in February 2022, within a month of the completion of the wreck removal. *See* ECF No. 1.

2. On February 21, 2024, Alfouadi served GMM and Demarest with his First Request for Answers to Admissions ("1RFA"). *See* ECF No. 55.

3. Demarest missed the deadline to respond to the 1RFA. *See* ECF No. 88.

4. On July 22, 2024, Alfouadi sought to deem the facts in the 1RFA admitted by filing Motion in Limine ("MIL") No. 1, asking the Court to preclude GMM and Demarest "from introducing any evidence or argument contrary to the admitted matters in 1RFA." ECF No. 91-1.

5. The Court held a hearing and granted Alfouadi's MIL No. 1. ECF No. 123.

6. GMM and Demarest sought to withdraw or amend their responses to the 1RFA through various filings, ECF Nos. 97, 122, 127, that the Court denied, ECF Nos. 119, 125, 133.

7. Demarest then moved to dismiss himself as a plaintiff for lack of standing "because all the rights and responsibilities which were initially accepted individually by Plaintiff Demarest on January 2, 2022 were fully and completely transferred to GMM on January 12, 2022." ECF No. 154 at 1.

8. Demarest elaborated that "the rights permanently transferred from Plaintiff Demarest to Plaintiff GMM on January 12, 2022 included the alleged original meeting of the minds between Mr. Demarest, as an individual, and Mr. Alfouadi on January 2, 2022[.]" *Id.* at 2.

9. The Court granted Demarest's Motion for Voluntary Dismissal, meaning GMM was the only remaining Plaintiff. ECF No. 157.

10. The Court then reopened the dispositive motions deadline to allow Defendant to brief the effect of the voluntary dismissal, *see* ECF No. 165, and Alfouadi filed his "Motion to Dismiss Plaintiff's First Amended Complaint, or in the Alternative, for Summary Judgment as to All Claims," ECF No. 166 ("Motion to Dismiss").

11. In opposition to the Motion to Dismiss, GMM highlighted that the 1RFA was only addressed to Demarest and not GMM. *See* ECF No. 170 at 13.

12. The Court denied Alfouadi's Motion to Dismiss, ECF No. 180, teeing up the remainder of this case for trial.

13. In its order denying the Motion to Dismiss, the Court acknowledged that the "relevant 1RFA questions were indeed directed to Demarest and not GMM" and decided that it would technically "not attribute Demarest's admissions to GMM." *Id.* at 20.

14. Still, those admissions included that Demarest misrepresented to Alfouadi on January 6, 2022 that he had been awarded a salvage contract by the State of Hawai'i even though this was not true, and Alfouadi detrimentally relied on this misrepresentation. *See id.* at 5 (citing ECF No. 168-4 ¶¶ 26–34); *see also* Ex. 204.

15. And, as discussed more thoroughly below, the circumstances of the January 6 conversation demonstrate that Demarest's misconduct should also flow to GMM, his single-member LLC.

16. Regarding the effect of Demarest's motion for voluntary dismissal, the Court noted that GMM alleged claims on its own behalf in the operative First Amended Complaint, such that its claims were not entirely dependent on any

5

assignment of claims from Demarest to GMM. *See* ECF No. 180 at 9.[1] In other words, the Court would hold a bench trial on GMM's own claims.

## FINDINGS OF FACT[2]

### The Parties and the Court's View of the Protagonists

17. GMM is a single-member limited liability corporation first incorporated in 2004 in the state of Vermont. *See* ECF No. 279 at 158:12–21.

18. GMM is a company that raised mushrooms, produced teas and other extracts, and consulted on mushroom production and using fungi to break down toxic waste. *See id.* at 159:13–20.

19. GMM had never been a salvor of record for a boat salvage wreck removal before the events in this case. *See id.* at 171:22–25.

20. Demarest is the sole member and managing director of GMM. *See id.*; *see also id.* at 143:24 – 144:1.

---

[1] As the Court concludes there was no agreement between GMM and Alfouadi in any event, it need not address whether Demarest's statements in his voluntary dismissal constituted admissions that GMM was not a party to any agreement with Alfouadi.

[2] Any finding of fact that should more properly be deemed a conclusion of law and any conclusion of law that should more properly be deemed a finding of fact shall be so construed.

21. While Demarest was an experienced sailor, and had assisted with salvage operations, he had not done paid salvage work or been salvor of record before the events in this case. *See id.* at 63:16 – 66:16, 171:18 – 172:6.

22. Alfouadi owned the 29-foot sailboat at the center of this case. *See* ECF No. 281 at 79:20 – 80:11.

23. Before the grounding, Alfouadi lived on the boat and kept it in the Mala mooring field off the coast of Lahaina. *Id.* at 96:6–11.

24. Alfouadi was also an experienced sailor, ECF No. 280 at 205:17 – 207:5, and had engaged in both paid and volunteer salvage work and had been involved in about 30 different salvage or wreck removal jobs, *see* ECF No. 281 at 86:13; *see also id.* at 86:13 – 92:25.

25. Demarest and Alfouadi were previously friends, but about a year before the grounding of Alfouadi's boat, their friendship dissolved over an argument they had when repairing a roof together. *See* ECF No. 279 at 186:15 – 22; ECF No. 281 at 113:3 – 115:15.

26. After that argument, Demarest no longer trusted Alfouadi, ECF No. 279 at 187:13–17, and Alfouadi lost all respect for Demarest, ECF No. 281 at 116:11–12.

**The Grounding of the Boat – January 2**

27. Mala Wharf is a historic pier adjacent to a boat ramp and a rock jetty on Maui. *See* Ex. 15.

28. On January 2, 2022, a storm broke Alfouadi's boat free from its mooring. *See* ECF No. 280 at 149:18–24.

29. Jeffrey Pratt, a friend of Alfouadi's, testified as to what occurred that day. The Court found Pratt generally credible based on his demeanor, consistency of his testimony, and—despite his friendship with Alfouadi—free of obvious motive to be less than truthful. *See id.*; *see also id.* at 150:5–22. He presented matter-of-fact testimony about the situation.

30. Pratt had been on the water that day on his own boat but returned to Mala Wharf when the storm arrived. *See id.* at 160:23–25.

31. Once back on land, Pratt noticed Alfouadi's boat drifting free from its mooring near Mala Wharf. *See id.* at 162:10–15.

32. He called Alfouadi, who wasn't on the boat, but was instead running toward the wharf. *See id.* at 162:15–19.

33. Pratt yelled at people to try to grab Alfouadi's boat, but it nonetheless cruised in and got stuck between the wharf and the jetty. *See id.* at 162:21–25.

34. Alfouadi jumped into the water and climbed onto the boat to try to start the outboard motor. *See id.* at 166:12–25.

35.   The high waves prevented him from starting the engine and were causing the hull of the boat to bang against the rocks. *See id.*

36.   Eventually, the rocks punctured the hull and the boat "sank pretty darn quick after that." *Id.* at 167:1–3.

37.   At that time, only Pratt and Alfouadi were attending to the boat. *See id.* at 167:7–17.

38.   Flotsam started floating out of the boat, so Pratt called his family to help gather the debris in the water and on the beach. *See id.* at 168:20 – 169:3.

39.   Demarest[3] showed up and joined Alfouadi and Pratt while the mast of the boat was banging against the historic wharf. *See* ECF No. 281 at 139:12 – 140:18; Ex. 220.

40.   To prevent damage to the wharf, Pratt and Alfouadi cut the mast using a grinder Pratt had in his truck. *See* ECF No. 280 at 169:9–21.

41.   Demarest claims that it was around this time when he and Alfouadi, in the presence of Pratt, reached their agreement that GMM would conduct the salvage. *See* ECF No. 279 at 60:6 – 62:11.

---

[3] For the sake of readability, the Court mostly uses "Demarest" in its narrative of the facts because he was the person interacting with the other people involved in this case, and obviously the person who testified for GMM. The Court's use of "Demarest" is not meant to suggest that GMM as an entity was not doing the work—in fact the Court thinks there is decent evidence that Demarest was trying to channel the work through GMM. *See* Exs. 24, 37.

9

42. According to Demarest, he told Alfouadi "sorry for your loss" and offered to have GMM take responsibility for the environmental salvage and wreck removal if Alfouadi quickly opened a claim with his insurance company that GMM could collect from. *See id.* at 61:11–14.

43. Demarest claims that Alfouadi accepted the offer and said something to the effect of OK, let's get to work. *See id.* at 62:2–11.

44. Based on the evidence in the record, the Court does not believe that Demarest and Alfouadi had such a conversation on January 2.

45. Instead, Demarest was not present when Alfouadi and Pratt cut up the mast. *See* ECF No. 281 at 140:12–18; ECF No. 280 at 171:6–9.

46. Alfouadi and Pratt both credibly denied that any conversation about Demarest or GMM conducting the salvage occurred on January 2. *See* ECF No. 281 at 141:8–18; ECF No. 280 at 187:18–22, 188:1–12, 189:1–4.

47. Nevertheless, Demarest involved himself in the matter on the night of January 2, 2022, when he and State of Hawaii Department of Land and Natural Resources ("DLNR") officer Cory Fernandez spoke to Alfouadi on his boat. *See* ECF No. 281 at 148:2–20.

48. Apparently, Fernandez was asking Alfouadi about hazmat removal. *See id.*

10

49.     The Court believes that Demarest was trying to figure out how to monetize the grounding and was injecting himself into the situation without being asked and without an agreement.  *See id.* at 149:10 – 150:3.

**The Early Days of Wreck Removal – January 2 to January 6**

50.     From the time of the storm and on each of January 3, 4, and 5, Alfouadi worked on scene from essentially sunrise to sunset.  *See id.* at 154:1 – 158:3, 167:21 – 168:16.

51.     During those days, the boat was strung with lines and hauled up onto the rock jetty.  *See* Exs. 222, 223, 225, 226.  Alfouadi, Pratt, and other people from the boating community assisted with the work.  *See* ECF No. 281 at 154:1–24.

52.     They were using supplies from Lahaina Welding, a shop near the wharf where Alfouadi was helping the owner fix the property and that Alfouadi had full access to.  *See id.* at 94:2–12, 158:5–13.

53.     The exact extent of Demarest's physical work on the boat between January 2–6 is somewhat unclear.  ECF No. 280 at 179:21 – 180:10; ECF No. 281 at 165:11–15.

54.     He is not depicted in any of the photographs taken on Pratt's phone from that time.  Exs. 222–23, 225–26.

11

55.  Instead, he seemed focused on purchasing things he thought he could use to remove the wreck like $140 garbage cans, a $373 wheeled cart, a $1224 dust extractor, and a $259 dust extracting skill-saw.  *See* Ex. 2 at 1.  He also spent $7 dollars to print an incident report for Alfouadi to fill out.  *See id.*

56.  However, on the night of January 4 into the early morning of January 5, Demarest collected flotsam from the site as rough conditions continued to break the boat apart.  Exs. 27, 28, 101; ECF No. 279 at 83:25 – 84:11, 86:19 – 87:5, 115:13 – 117:18.

57.  Around January 4 or 5, Demarest also asked Andre Espiritu, an experienced diver to help with the salvage job.  *See* ECF No. 279 at 19:5–6, 21:2–10.

58.  The Court found Espiritu credible based on his demeanor and obvious care for the reef around Mala Wharf.  *See id.* at 21:22 – 22:5.

59.  Espiritu testified that Demarest told him at some point in the early days of the salvage that Demarest would probably be able to pay him out of insurance claim money.  *Id.* at 21:16–19.

60.  Espiritu's work involved diving with a scuba tank to collect small pieces of debris, and then helping float larger pieces of debris using float bags.  *Id.* at 25:18–25.

61.  However, most if not all of Espritu's work occurred after January 6.  *See id.* at 24:24 – 25:1.

12

62. During January 3–5, Demarest was also running around trying to get papers signed and discussing potential insurance claims.

63. For example, Demarest printed out and presented Alfouadi with a U.S. Coast Guard Recreational Boating Accident Report, for Alfouadi to sign on January 4. Ex. 248; ECF No. 279 at 138:20 –139:5.

64. The Court fully believes Alfouadi when he testified that Demarest was "badgering" him to sign the report. *See* ECF No. 281 at 196:2–5.

65. As the Court sees it, Alfouadi was entirely focused on just doing the work of wreck removal from January 2 through January 6.

66. He was working out on the jetty "before the crack of dawn" until sunset. *See id.* at 151:7–18

67. Demarest meanwhile was trying to create a paper trail by emailing DLNR and Defendant's insurer and signing his emails as manager of GMM. *See* Exs. 24, 37; ECF No. 279 at 144:17 – 146:13.

68. According to Alfouadi, on the night of January 3, Demarest spoke with Alfouadi and proposed that if Alfouadi allowed Demarest to bill Alfouadi's insurer, Demarest would kick some of the proceeds back to Alfouadi. *See* ECF No. 281 at 155:15 – 156:3.

69. Alfouadi testified that he told Demarest he did not want to do that. *See id.* at 156:4–16.

13

70.     The Court does not necessarily believe that the conversation unfolded

*exactly* as Alfouadi testified, but does think that the similarities between that

conversation and Demarest's narrative about the alleged oral contract

formation on January 2, suggests there is a lot of truth to the matter.

71.     That Demarest spent those first couple days buying items and trying to get

Alfouadi to sign things also suggests to the Court that he was trying to take

advantage of Alfouadi's misfortune and start a new business.

**The Argument and Demarest's Seizure of the Job – January 6**

72.     The whole nature of the salvage operation changed on January 6, after

Alfouadi walked off the job and left Demarest to complete the task.

73.     On the afternoon of January 6, 2022, much of the boat was up on the rock

jetty.  *See* ECF No. 281 at 212:1–5.

74.     That day, Demarest heard that Alfouadi was using one of Demarest's

circular saws with a generator on the rock jetty.  *See* ECF No. 279 at 93:7–

16.

75.     Demarest thought that was unsafe, so he went to the site to confront

Alfouadi.  *See id.* at 93:13–23.

76.     The two argued about the safe use of equipment and Demarest (possibly

acting as GMM) emphasized that as the salvager of record or official

salvager—as confirmed by the State—he was responsible for the salvage

and that if anything went wrong it would be on his shoulders. *See id.* at 91:14–25; ECF No. 281 at 192:4–21.

77. Alfouadi understood "salvager of record" to mean that the State had effectively selected or approved of Demarest or GMM for the job. *See id.* at 193:13–20. Alfouadi was shocked by this news and left the jobsite never to come back. ECF No. 281 at 197:9–10.

78. This argument likely occurred around 3:30 p.m. *See id.* at 197:11–12; ECF No. 279 at 94:19–20.

79. Based on Demarest's failure to respond to the 1RFA, he has admitted that on January 6 he represented to Alfouadi that he had been awarded a salvage contract by the State and that he was the salvager-on-record as to the sailboat. *See* Ex. 204 ¶¶ 26–27.

80. In fact, the State had not awarded him a salvage contract, yet Demarest intentionally misrepresented that to Alfouadi with the intent that Alfouadi would rely on it. *Id.* ¶¶ 29–33.

81. Alfouadi relied on this misrepresentation. *Id.* ¶ 34.

82. The evidence and effect of the admissions demonstrate that Alfouadi stopped working on the job because Demarest misrepresented that the State had placed him in charge of the salvage operation.

15

83. After Alfouadi walked off the job, portions of the boat that had been on the rock jetty, were back in the water just 45 minutes later. *See* ECF No. 281 at 233:7–10; Exs. 101, 295 (duplicates).

84. Alfouadi testified that a video taken shortly after the argument depicts pieces of the hull that had been up on the rocks "high and dry" were back in the water. *See* ECF No. 281 at 211:15 – 212:23.

85. During trial, Demarest never rebutted the implication that he intentionally released portions of the boat back into the water on the afternoon of January 6, but instead argued in his written closing statement that someone would have seem him put items back in the water. *See* ECF No. 272 at 16–17.

86. But in fact, Demarest testified that the jetty was difficult to walk on and that for some of the pieces of the boat it was easier to remove them from the water. *See* ECF No. 279 at 86:23 – 87:3, 119:15–18.

87. Alfouadi testified that the pieces on the jetty on January 6 were extremely light and that he and Pratt would have been able to carry everything off the jetty by the end of the day. *See* ECF No. 281 at 214:19–23, 216:8 – 219:8.

88. The Court finds Alfouadi's testimony more persuasive and finds that Demarest intentionally released portions of the boat back into the water after Alfouadi walked off the job during the afternoon of January 6, 2022.

89. If Alfouadi had not stopped working after the argument, he also had a plan to remove the remaining large segments of the boat like the keel, diesel engine, and diesel tank, from the water within a couple days. *See* ECF No. 281 at 222:24 – 233:10.

**Completion of Wreck Removal – January 6 through January 19**

90. After Alfouadi stopped working, Demarest and the people he had helping him—including Espiritu—worked on the wreck removal until they completed the job on January 19. *See* ECF No. 279 at 157:12–20.

91. This work included diving to collect small debris from the water and using lift bags to float heavier items like the keel and engine to transport them around coral. *See id.* at 25:15 – 29:7.

92. Demarest also kept buying and renting things allegedly for the job, with the charges exceeding $21,000. *See* Ex. 2.

93. Some of the documented charges include replacement sandals, sunglasses, and a cell phone. *See id.*

94. They also included an alarming $700 dollar in medical supplies "for wounds," and nearly $5,500 in "rapid depreciation" of Demarest's girlfriend's truck. *See id.*

95. Alfouadi never told Demarest to stop working on the operation. *See id.* at 156:2–8.

96. If the boat had not been removed, the State would have removed it and sought reimbursement. *See* ECF No. 261-1 at 13:3–9 (Depo. Trans. of Edward Underwood).

**Alfouadi's Correspondence with His Insurer**

97. As Plaintiff claims that Alfouadi breached the oral or implied contract by failing to file a claim with the boat's insurer, the Court examines the efforts Alfouadi undertook with regards to his insurance.

98. There's no dispute that Alfouadi only had liability insurance on the boat. *See* ECF No. 281 at 156:4–16; ECF No. 279 at 61:5–8.

99. The parties understood this to mean that Alfouadi would not be reimbursed for the loss of his boat. *See id.*

100. Yet, they were also under the impression that if Alfouadi filed a claim with his insurer, people who worked on the salvage operation may receive compensation. *See* ECF No. 281 at 239–43; ECF No. 282 at 53–54.

101. After the January 6 argument, Alfouadi started hearing that Demarest was bad-mouthing him in the community for preventing Demarest from billing Alfouadi's insurance company. *See* ECF No. 281 at 239:10–18, 241:21–25; ECF No. 282 at 54:15–18.

18

102. These rumors in the community clearly upset Alfouadi as he got agitated anytime he talked about them, speaking even more quickly than he did throughout the rest of his testimony. *See id.*

103. At some point after the grounding of the boat, Alfouadi called his insurance agent and his takeaway from the call was that the insurance company's initial guess was that it would not pay for the wreck removal, but that Alfouadi needed to submit a claim to know for sure. *See* ECF No. 282 at 53:14–22.

104. Alfouadi understood that he could submit a claim online or over the phone, and that there was no deadline by which to submit the claim. *See id.* at 53:24 – 54:5.

105. Based on that understanding, Alfouadi resolved to file the claim later—after he was done with wreck removal—with the help of some type of professional. *See id.* at 54:5–13; ECF No. 281 at 240:13–24.

106. The Court generally believes that Alfouadi intended to file a claim when he got a "breather" from working on the wreck removal. *See* ECF No. 282 at 54:3–11.

107. His intent was to file a claim to allow anyone to seek compensation for their work on the wreck removal. *See id.* at 69:17 – 70:11.

19

108.  When he started to hear what Demarest was saying in the community though, the matter took on more urgency.  *See* ECF No. 282 at 54:14–18, 68:1–12; ECF No. 281 at 241:21–25.

109.  Alfouadi understood that Demarest intended to bill the insurance company for his work.  *See* ECF No. 282 at 52:24 – 53:6.

110.  Around January 20, Alfouadi contacted a public adjuster to file an insurance claim.  *See* ECF No. 281 at 241:25 – 242:1.

111.  His impression from the public adjuster was that he would need to collect documents and photos from Demarest so that the adjuster could file the claim.  *See id.* at 242:5–8; ECF No. 282 at 55:19–22.

112.  Because Alfouadi and Demarest were not speaking, Alfouadi asked an intermediary to ask Demarest for the documentation.  *See* ECF No. 281 at 242:15 – 243:12; ECF No. 282 at 55:23 – 56:7.

113.  Apparently, Demarest never submitted anything.  *See* ECF No. 281 at 243:11–14; ECF No. 282 at 56:3–10.

114.  Alfouadi never filed a claim.  *See* ECF No. 282 at 56:12–13.

115.  All the while, Alfouadi was under the impression that the State had deemed Demarest the salvager of record.  *See* ECF No. 281 at 243:15–25.

**Credibility**

116. In the event it isn't clear from the above, the Court outlines its general credibility findings. The Court did not find Demarest credible on key facts because his story conflicted with other witnesses' testimony that the Court found more believable. Further, at a basic level, Demarest's story is implausible: why would Alfouadi contract with GMM—a mushroom company with no experience of salvage work—when Alfouadi and Demarest did not like each other and Alfouadi was happy to do the bulk of work himself with his friend and other people in the community?

117. The Court also found Demarest motivated by taking advantage of an unfortunate situation. Further, Demarest admitted to misrepresenting to Alfouadi that he was the salvager of record, demonstrating that he's not above lying if it suits his purposes. Additionally, any reasonable person, acting above-board, would have handled the salvage situation differently and put aside personal differences to communicate with Alfouadi after their January 6 argument before expending the time and energy he or GMM did. Instead, Demarest apparently started bad-mouthing Alfouadi in the community. The nail in the credibility coffin is the extensive and unnecessary purchases Demarest made in the name of the "salvage" and the expenses he said he suffered. His willingness to claim some of these

expenses (e.g., the $700 in medical supplies and over $5,000 in depreciation to his girlfriend's truck) ruins his credibility.

118. The Court also did not find Alfouadi fully credible based on his scattered, stubborn, and combative demeanor. Alfouadi often seemed more motivated by winning semantic arguments than truthfully and directly answering questions. His ego and pettiness during the relevant time period exacerbated the salvage situation and contributed to the morass the Court must now wade through. In some ways, Alfouadi and Demarest are two peas in a pod.

119. Still, Alfouadi's testimony was consistent and painted a plausible picture: he was working to clear his wrecked boat until Demarest swooped in and seized control of the job based on misrepresentations.

## CONCLUSIONS OF LAW

As an initial matter, because the Court concludes that (1) Alfouadi did not manifest assent to any oral or implied agreement with Demarest—either with Demarest acting in his individual capacity or on behalf of GMM—and (2) Demarest's misconduct in taking control of the wreck removal flows to GMM, the Court does not need to, nor does it, definitively resolve whether GMM did any of the work at issue in this case. In other words, while there's no doubt that Demarest or the Demarest-controlled GMM ultimately performed the wreck removal, the Court need not decide which entity was doing the work.

## A.  Jurisdiction and Applicable Law

1.  The Court has jurisdiction over the instant action under 28 U.S.C. §§ 1333 (admiralty jurisdiction) and/or 1367 (supplemental jurisdiction).  *See* ECF No. 76 at 6–10 (detailing basis for Court's jurisdiction).

2.  When considering the contract and quantum meruit claims here, the Court turns to Hawaiʻi law.  *See S/Y Paliador, LLC v. Platypus Marine, Inc.*, 750 F. Supp. 3d 1187, 1198 (W.D. Wash. 2024) (explaining that in the exercise of admiralty jurisdiction, "[s]tate law may supplement federal maritime law when such federal common law is silent on an issue or when a dispute is inherently local." (citation omitted)); *MB Marine LLC v. Wiehle Indus. Inc.*, 2025 WL 1355261, at *4 (W.D. Wash. May 9, 2025) (applying Washington law to quantum meruit claim); *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024) ("When no established [federal maritime] rule exists, and when the federal courts decline to create a new rule, federal courts apply state law." (citation omitted)); ECF No. 76 at 7 ("Ultimately, the Court concludes that it has admiralty jurisdiction under § 1333 and—as both parties agree—Hawaiʻi law regarding contract formation applies.").

3.  Federal maritime law governs the pure salvage claim.  *See Bartholomew v. Crowley Marine Servs., Inc.*, 337 F.3d 1083, 1085 (9th Cir. 2003), *as*

*amended* (Sept. 12, 2003) ("The doctrine of salvage has been part of our admiralty law since early in our nation's history.")

**B.      Count I – Breach of Oral Contract**

**Law**

4.      "[I]n order for an oral contract to be enforceable, there must be an offer, an acceptance, and consideration." *Douglass v. Pflueger Hawaii, Inc.*,110 Hawai'i 520, 525, 135 P.3d 129, 134 (2006) (citing *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 384, 14 P.3d 1049, 1065 (2000)).

5.      "It is a fundamental principle of law that there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." *Carson v. Saito*, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971); *see also* Restatement (Second) of Contracts § 50(1) (1981) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.").

**Analysis**

6.      Beyond any other potential issues with GMM's breach of oral contract claim—such as whether it was a party to the purported contract—the Court concludes that GMM has not met its burden to prove by a preponderance of the evidence that Alfouadi accepted any offer and/or that there was mutual

assent on the essential elements of the purported agreement.  For this reason, it need not determine the extent to which GMM did any of the salvage work.

7.      Plaintiff argues that the whole offer and acceptance process took place on the rock jetty on the evening of January 2, 2022, when Demarest was speaking to Alfouadi in the presence of Pratt.

8.      But as stated above, the Court does not believe that such a conversation took place because both Alfouadi and Pratt denied it did.

9.      Plaintiff offers no alternative conversation when Alfouadi could have assented to the terms of any offer.

10.     As "contracting is a sentient process," *see S. Foods Group, L.P. v. State of Hawai'i, Dep't of Educ.*, 89 Hawai'i 443, 457, 974 P.2d 1033, 1047 (1999) (citation omitted), the absence of Plaintiff's purported offer and acceptance conversation doom his claim for breach of an express oral contract.

11.     The lack of definiteness about any terms of the deal also bolsters the Court's conclusion that the parties never had a meeting of the minds.

12.     Most obviously, even in Demarest's telling of the alleged contracting process, he and Alfouadi did not discuss price for or any expected duration of GMM's work.  Specifically, the protagonists did not discuss hourly rate, whether GMM would hire anyone, that GMM would buy any equipment for

the job, how long the work might take, or a rough ballpark estimate of cost. *See* ECF No. 279 at 195:8 – 196:18.

13. Instead, Demarest possibly acting for GMM, testified that he relied on an understanding that Demarest believed Alfouadi had from prior interactions between the two. *See id.* at 197:1–4.

14. But Demarest had never done paid salvage work, and there was no evidence that he and Alfouadi had worked on salvage operations together before.

15. Further, the Court finds it extremely unlikely that Alfouadi would have been keen to contract with Demarest considering that he did not respect him after their argument during their previous roofing job.

16. Similarly, as Demarest did not trust Alfouadi, the Court believes he would have sought to memorialize any agreement with Alfouadi if there were one.

17. On an even more basic level, there is no plausible explanation as to why Alfouadi would contract with GMM to perform the salvage.

18. Alfouadi had more experience on salvage jobs than Demarest did, access to equipment at Lahaina welding, and the free help of Pratt.

19. Based on those details, and the fact that Alfouadi performed the bulk of the work himself from January 2 until the January 6 argument, there is little indication that he would need the help of GMM.

20. While Demarest also had some salvage experience—albeit minimal—as an individual, GMM was a mushroom company that had never conducted a salvage operation.

21. In sum, the absence of any credible evidence that GMM and Alfouadi explicitly agreed to any deal coupled with the circumstantial evidence that demonstrates the implausibility of such a deal, the Court concludes that Plaintiff has not established by a preponderance of the evidence that there was any mutual assent between the parties.

## C. Count II – Breach of Implied Contract

**Law**

22. In Hawaiʻi, an implied contract exists where:

> [T]he intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, as in the case where a person performs services for another, who accepts the same, the services not being performed under such circumstances as to show that they were intended to be gratuitous, or where a person performs services for another on request.

*Kemp v. State of Hawaiʻi Child Support Enf't Agency*, 111 Hawaiʻi 367, 391, 141 P.3d 1014, 1038 (2006) (quoting *Durette v. Aloha Plastic Recycling*, 105 Hawaiʻi 490, 504, 100 P.3d 60, 74 (2004)) (emphasis omitted).

27

23. The "essential element of an implied contract" is a "*mutual intent to form a contract*" that is implied from the "*actions* of the parties." *Id.* (emphases in original).

**Analysis**

24. The Court concludes that Plaintiff has not established by a preponderance of the evidence that Alfouadi's actions manifested assent to form a contract. Again, based on this conclusion, the Court need not determine the extent to which GMM did any of the salvage work.

25. Plaintiff argues that a contract can be inferred from the fact that Alfouadi never told Demarest or GMM to stop the salvage work and that Alfouadi understood that Demarest or GMM expected to be compensated. *See* ECF No. 272 at 11–12.

26. The Court recognizes that inaction may imply assent, *see* Restatement (Second) of Contracts § 4 (1981), but the Court must determine whether an implied contract exists based on circumstances, *see Durette*, 105 Hawai'i at 504, 100 P.3d at 74.

27. Here, based on the totality of the circumstances, the Court concludes that Alfouadi's inaction or silence in the face of Demarest's (or GMM's) work does not establish assent to any agreement.

28

28.     The Court finds the more plausible explanation of Alfouadi's silence to be that he felt duped and angry by Demarest's misrepresentation that he or GMM was the salvager of record according to the State and that Demarest scolded him for using the power saw near the water.

29.     The Court surmises as much because Alfouadi's behavior toward the salvage operation completely changed after the January 6 argument.

30.     Prior to the argument, Alfouadi was constantly working to get the boat of out the water.

31.     He took the lead on the operation, with help from Pratt, and progress was being made.

32.     For those first few days after the grounding, Demarest meanwhile was peripheral to the work at Mala Wharf.

33.     He was purchasing items, filling out papers, and sending emails.

34.     Then, both Demarest and Alfouadi—in a rare moment of accord—testified that during the January 6 argument Demarest said something to the effect that he was the salvager of record and responsible for the operation.

35.     The Court believes Alfouadi when he testified that he was shocked at that news.

36.     His surprise suggests that in his mind there wasn't any agreement for Demarest or his company to lead the salvage operation before January 6.

37. Further, Alfouadi testified that he understood that being the salvager of record meant that the State had effectively selected Demarest (or GMM) for the job. ECF No. 281 at 193:13–19.

38. As such, the Court interprets Alfouadi's inaction in the face of Demarest's continued work after the January 6 as evidence that he thought the matter had already been decided by forces outside his control; not as definitive evidence of any implied agreement with Demarest.

39. Similarly, the Court does not think that Alfouadi's understanding that Demarest or GMM expected to be paid, or that Alfouadi made some efforts to open an insurance claim to compensate GMM, necessarily demonstrate assent to an implied contract.

40. Alfouadi seemed to be under the impression that Demarest or GMM may be entitled to seek compensation from his insurer because the State had selected him as the salvager of record.

41. As established by the admissions to the 1RFA though, that impression was based on Demarest's misrepresentation.

42. As such, any expectation that Demarest would seek recompense was based on the misrepresentation and not any implied agreement.

30

43.    Further, Alfouadi's motivation to file an insurance claim to allow Demarest to seek compensation seems derived from Demarest's bad-mouthing of him in the community.

44.    In other words, Alfouadi largely acted based on peer pressure or concern for his reputation, rather than any understanding that he and Demarest had formed some type of contract.

45.    In sum, Alfouadi's conduct does not evince any "mutual intent to form a contract," but rather suggests that he felt cornered by his understanding that Demarest was salvager of record and the pressure that Demarest was exerting on him by bad-mouthing him in the community.

**D.    Count III – Quantum Meruit**

**Law**

46.    In Hawai'i, "'[t]he basis of recovery on quantum meruit is that a party has received a benefit from another which it is unjust for him to retain without paying therefor.'" *Hawaii Ventures, LLC v. Otaka, Inc.*, 114 Hawai'i 438, 164 P.3d 696, 742 (2007) (quoting *Maui Aggregates, Inc. v. Reeder*, 50 Haw. 608, 610, 446 P.2d 174, 176 (1968)); *see also Durette*, 105 Hawai'i at 504, 100 P.3d at 74 (stating that to prove a claim for unjust enrichment a plaintiff must only establish that she conferred a benefit upon the opposing party and retention would be unjust).

47. "Under Hawaii law, whether the [d]efendants received some benefit in the exchange is key." *UCSF-Stanford Health Care v. Hawaii Mgmt. All. Benefits & Servs., Inc.*, 58 F. Supp. 2d 1162, 1171 (D. Haw. 1999) (citation omitted).

48. Yet, "[q]uantum meruit is an equitable claim," and "[u]nder the doctrine of unclean hands, it is expressed that 'he who comes into equity must come with clean hands[.]'" *See Wagner v. World Botanical Gardens, Inc.*, 126 Hawai'i 190, 203, 268 P.3d 443, 456 (App. 2011) (quoting *7's Enters., Inc. v. Del Rosario*, 111 Hawai'i 484, 494, 143 P.3d 23, 33 (2006)).

49. To invoke the unclean hands defense, the misconduct of the person seeking compensation must relate to the matter at hand:

> The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern.

*7's Enters.*, 111 Hawai'i at 495, 143 P.3d at 34 (citation and emphasis omitted).

50. "The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he

seeks relief, however improper may have been the behavior of the

defendant.'" *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 876–77 (9th

Cir. 2000) (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324

U.S. 806, 814 (1945).

51. Any claim of unclean hands "must be judged on its particular facts and

circumstances." *Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 230–31, 553 P.2d

733, 744 (1976) (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290

U.S. 240 (1933)).

52. In applying the maxim, courts "are not bound by formula or restrained by

any limitation that tends to trammel the free and just exercise of discretion."

*Keystone Driller Co.*, 290 U.S. at 245–46.

53. "Generally, the defendant has the burden of proof on all affirmative

defenses, which includes the burden of proving facts which are essential to

the asserted defense." *U.S. Bank Nat'l Ass'n v. Castro*, 131 Hawai'i 28, 41,

313 P.3d 717, 730 (2013) (citation omitted); *see also E\*Trade Bank v.

Gibson*, 152 Hawai'i 111, 2022 WL 17850138, at \*6–7 (App. Dec. 22,

2022).

## Analysis

54. While Demarest or GMM completed the wreck removal after Alfouadi

stopped working, the Court concludes that Defendant has met its burden and

sufficiently established that Demarest's unclean hands infected the entire job and preclude GMM from recovering anything.

55.     As alluded to above, Admissions Nos. 26 through 35 to the 1RFA (Ex. 204) establish that Demarest intentionally misrepresented to Alfouadi that the State had awarded him a salvage contract or deemed him salvager of record.

56.     And even if the admissions are technically only binding as to Demarest, equity would not be served if the Court were to allow GMM to benefit from Demarest's misconduct merely based on its distinct corporate existence:  it bears repeating that GMM is a single member LLC with Demarest as its sole member. *See Scudder v. Pierce*, 2013 WL 4711530, at *10 (Haw. App. Aug. 30, 2013) ("A business association has unclean hands, for the purpose of denying equitable relief, if 'persons exercising general control over its affairs' have knowledge of the inequitable conduct of those acting on its behalf. (citing *Associated Press v. Int'l News Serv.*, 240 F. 983, 989 (S.D.N.Y. 1917) (Augustus Noble Hand, J.), *modified*, 245 F. 244 (2d Cir. 1917), *aff'd*, 248 U.S. 215 (1918))).

57.     Thus, in the Court's view, whether Demarest was speaking individually or on behalf of GMM when he made that misrepresentation is largely irrelevant because what matters is the intent behind the statement and its expected effect on Alfouadi.

58. Demarest—whether individually or as the representative of GMM—was trying to control Alfouadi's actions via the misrepresentation.

59. By misrepresenting to Alfouadi that the State had awarded Demarest a salvage contract, Demarest was trying to get Alfouadi to stop doing the wreck removal as Alfouadi wanted to, and to permit Demarest to run the show.

60. In other words, Demarest used the misrepresentation to take control of the wreck removal.

61. That ploy worked as it clearly changed Alfouadi's behavior.

62. Prior to the misrepresentation, Alfouadi was tirelessly working to remove the wreck, but abruptly stopped when he heard Demarest's misrepresentation.

63. For that reason, the Court has no trouble concluding that Demarest acted inequitably with regard to the matter being litigated—compensation for the wreck removal—in such a way that "affected the equitable relations" between Alfouadi on the one hand and Demarest on the other. *7's Enters.*, 111 Hawai'i at 495, 143 P.3d at 34.

64. Demarest's misdeeds did more than "affect[] the equitable relations" between him and Alfouadi; they totally flipped things on their head.

65. Every indication is that Alfouadi and his friends would have completed the wreck removal with Demarest as a peripheral figure at best.

66. But Demarest's misrepresentations allowed him to usurp control in an attempt to profit.

67. Even aside from the misrepresentations, the Court concludes that Demarest acted inequitably.

68. First, as mentioned throughout, Demarest immediately tried to take advantage of Alfouadi's misfortune and tried to turn the grounding of the boat into a business opportunity.

69. This is evidenced by the fact that within a day of the grounding, Demarest tried to involve Alfouadi in some type of scheme to extract payments from Alfouadi's insurance company, a part of which Demarest would then channel to Alfouadi.

70. Further, during those initial days after the grounding, Demarest repeatedly badgered Alfouadi into signing various documents.

71. This suggests that Demarest's main motivation was opportunism rather than any concern for getting the wreck removal done quickly.

72. The Court also finds that Demarest was trying to drive up costs of the operation at basically every stage.

73. For example, he purchased or claimed expenses for unreasonable things like two different pairs of replacement sandals.

74. Most concerningly, Demarest didn't sufficiently rebut Alfouadi's testimony that Demarest intentionally released segments of the boat back into the ocean further complicating and extending the operation.

75. The fact of the matter is that Demarest disrupted the wreck removal when he coopted the operation by means of deception.

76. The Court concludes as a matter of equity that GMM should not recover under a theory of quantum meruit based on that deception.

77. Even if Alfouadi left the job before it was done, it's clear that he would have finished the work at some point with help from others in the community.

**E.  Count IV – Pure Salvage**

78. Because the Court concludes that GMM's other claims fail, it turns to GMM's alternative claim that it is entitled to an award for pure salvage. *See* ECF No. 274 at 24 n.3.

**Law**

79. In "[t]he most recent complete judicial definition in this circuit of the elements for a [pure] salvage claim," *Bay & Delta Tractor Tug Co. v. Barge Pac. Trader*, 1997 WL 797935, at *1 (N.D. Cal. Dec. 16, 1997), the Ninth Circuit held:

The elements of a salvage claim are as follows: [(1)] There must be a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance. [(2)] The salvor's act must be voluntary—that is, he must be under no official or legal duty to render the assistance. [(3)] The act must be successful in saving, or in helping to save, at least a part of the property at risk.

*U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985), *superseded by statute on other grounds* (quoting The Law of Admiralty § 8–2 (2d ed. 1975) (citing 3A Benedict on Admiralty § 2 (1983)) (internal quotation marks omitted).

80. But "[t]he salvor who seeks a reward for his services in rescuing property on navigable waters[] must act in entire good faith and with honesty of purpose. He must come into court with clean hands." *Columbus-America Discovery Grp.* v. *Atl. Mut. Ins. Co.*, 56 F.3d 556, 569 (4th Cir. 1995) (citing 3A Martin J. Norris, Benedict on Admiralty § 99 (7th ed. 1993)).

81. "Admiralty courts have traditionally been vigilant in protecting mariners from unscrupulous and dishonest salvors." *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307, 1309 (5th Cir. 1988) (citations omitted).

82. "Because of the heightened vulnerability of a distressed ship and crew to exploitation by salvors, the law cannot tolerate salvors['] dishonesty, corruption, fraud, falsehood, either in rendering the service, or in their

38

proceedings to recover the salvage." *Id.* (internal quotation marks, alterations, and citation omitted).

## Analysis

83.   Assuming without deciding that GMM has met the elements of its pure salvage claim, the Court nonetheless concludes that it is not entitled to recovery because it only seized control of the salvage job via Demarest's misrepresentations.

84.   The Court (again) emphasizes that from the January 2 grounding of the boat until the argument on the afternoon of January 6, Alfouadi was doing the bulk of the work himself with his friend Pratt.

85.   If not for Demarest's misrepresentation about being the salvager of record, Alfouadi almost certainly would have continued to do most of the work himself.

86.   The intent and effect of Demarest's misrepresentations were to get Alfouadi out of the way to position GMM to profit from Alfouadi's misfortune.

87.   In an analogous context, courts have concluded that a salvor that intentionally misrepresented the terms of a salvage contract to obtain the job should be barred from recovery. *See Jackson Marine Corp.*, 845 F.2d at 1309; *St. Claire Marine Salvage, Inc. v. Bulgarelli*, 2014 WL 3827213, at *9 (E.D. Mich. Aug. 4, 2014), *aff'd*, 796 F.3d 569 (6th Cir. 2015).

39

88.     Likewise, here, Demarest or GMM seized control of the job by misrepresenting a material fact.

89.     The Court will not reward such "unscrupulous and dishonest" conduct and therefore finds against Plaintiff on its pure salvage claim.

## CONCLUSION

Based on the foregoing, the Court finds against Plaintiff and in favor of Defendant on all claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 11, 2026.

Jill A. Otake
United States District Judge

CIV. NO. 22-00064 JAO-KJM, *Green Mountain Mycosystems, LLC v. Alfouadi*; Findings of Fact and Conclusions of Law

EXHIBIT "A-1"

ASHFORD & WRISTON
A Limited Liability Law Partnership LLP
KEVIN W. HERRING          6722-0
kherring@awlaw.com
RYAN M. TOYOMURA      11300-0
rtoyomura@awlaw.com
First Hawaiian Center
999 Bishop Street, Suite 1400
Honolulu, Hawaii  96813
Telephone:  (808) 539-0400

KATON.LAW
GLENN KATON          *Admitted Pro Hac Vice*
gkaton@katon.law
385 Grand Avenue, Suite 200
Oakland, California  94610
Telephone:  (510) 463-3350
Facsimile:  (510) 463-3349


ATTORNEYS FOR PLAINTIFF
   GREEN MOUNTAIN MYCOSYSTEMS, LLC

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>RAIED J. ALFOUADI, et al.,<br><br>Defendants. | Case No.: 22-CV-00064 JAO KJM<br><br>**PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF RYAN M. TOYOMURA; CERTIFICATE OF SERVICE**<br><br>Judge:  Hon. Jill A. Otake<br>Trial Date:  September 15, 2025 |

EXHIBIT "A-1"

## PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE <u>NOTICE OF APPEAL</u>

Plaintiff GREEN MOUNTAIN MYCOSYSTEMS LLC ("GMM"), by and through its counsel, respectfully moves this Court for a thirty (30) day extension of time to file a Notice of Appeal regarding the Findings of Fact and Conclusions of Law [ECF 283] and Judgment [ECF 284] that were entered on March 11, 2026. Absent an extension of time, the deadline to file a notice of appeal would be Friday, April 10, 2026.

Based upon the pending deadline to file the Notice of Appeal on April 10, 2026, and ongoing settlement negotiations, GMM respectfully requests the Court to expedite review of and decision on this Motion.

Good cause exists to grant the Motion because the parties are currently engaged in settlement negotiations and a 30-day extension would give the parties additional time to try to resolve this matter in good faith without invoking the jurisdiction of the Ninth Circuit by filing a Notice of Appeal.

On April 2, 2026, counsel for Defendant RAIED J. ALFOUADI initiated discussions to settle and resolve pending and future matters related to this case, including any potential appeal. The settlement negotiations are ongoing and GMM believes that those discussions would benefit from the additional dialogue, thought and reflection that would be possible with an extension.

5091755.5                                      2

This motion is made following the conference of counsel pursuant to LR7.8 which took place on April 6, 2026.[1]

This Motion is also made pursuant to <u>Fed. R. App. P.</u> Rule 4(a)(5), <u>Fed. R. Civ. P.</u> Rules 7 and 11, LR7.1 and LR7.4, and paragraphs II and IV of the <u>General Civil Case Procedures Before Judge Otake</u>. The Motion is supported by the attached memorandum in support of motion, declaration of Ryan M. Toyomura, the records and files herein, and any arguments made at the hearing on the Motion.

DATED:  Honolulu, Hawaii; April 8, 2026.

/s/ Ryan M. Toyomura
KEVIN W. HERRING
RYAN M. TOYOMURA
Ashford & Wriston, LLLP

GLENN KATON
Katon.Law

Attorneys for Plaintiffs
GREEN MOUNTAIN MYCOSYSTEMS, LLC

---

[1] GMM recognizes that LR7.8 requires counsel to confer at least seven days prior to filing of the motion. However, given the limited time available before the April 10, 2026, deadline to file a Notice of Appeal, GMM respectfully submits this Motion now to give the Court as much time as possible to review the Motion.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC, | Case No.:  22-CV-00064 JAO KJM |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF MOTION** |
| vs. | |
| RAIED J. ALFOUADI, et al., | |
| Defendants. | |

## <u>MEMORANDUM IN SUPPORT OF MOTION</u>

Plaintiff GREEN MOUNTAIN MYCOSYSTEMS LLC ("GMM")

respectfully moves this Court for a thirty (30) day extension of time to file a Notice

of Appeal regarding the Findings of Fact and Conclusions of Law (ECF 283) and

Judgment (ECF 284) that were entered on March 11, 2026.  Absent an extension of

time, the deadline to file a notice of appeal would be Monday, April 10, 2026.

Good cause exists to grant the Motion because the parties are currently

engaged in settlement negotiations.  Those negotiations, which were initiated by

counsel for Defendant RAIED J. ALFOUADI ("Alfouadi") on April 2, 2026, seek

to settle and resolve pending and future matters related to this case as well any

potential appeal.  GMM believes that the ongoing settlement discussions would

benefit from the additional dialogue, thought and reflection that would be possible

with an extension. Because of the short time-frame, and the good-faith progression of the discussions, GMM respectfully requests that the Motion be reviewed on an expedited basis.

GMM believes that it is important to preserve its right to appeal the underlying orders and judgment pending the outcome of ongoing good faith settlement discussions between GMM and Defendant. An extension of time ensures that both parties can continue good-faith settlement negotiations without fear that such negotiations are only being employed for tactical or strategic reasons.

An extension of time to file a notice of appeal is reasonable and would not prejudice any party. Indeed, a settlement agreement would advance judicial economy and efficiency, as it would likely result in the full resolution of this case, including any pending and future motions and requests, and any appeals of the underlying orders and judgment.

## I.  LEGAL STANDARD

The grant or denial of a motion to extend time to file a notice of appeal is at the discretion of the district court. <u>See</u> <u>State of Or. v. Champion Int'l Corp.</u>, 680 F.2d 1300, 1301 (9th Cir. 1982)

Fed. R. App. P. ("FRAP") Rule 4(a)(1)(A) provides that a notice of appeal must be filed within 30 days after entry of the judgment or order appealed from. The district court may extend the time to file a notice of appeal if:

> (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
>
> (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

FRAP Rule 4(a)(5)(A).

As this motion is being made before the 30-day deadline under FRAP Rule 4(a)(1)(A), the "**good cause**" standard is applicable. See State of Or. v. Champion Int'l Corp., 680 F.2d 1300, 1301 (9th Cir. 1982) ("Although the Rule allows an extension of time upon a showing of excusable neglect or 'good cause,' the latter is applicable only where a motion is filed before the extension of the thirty-day period. The good cause language was added to the Rule by a 1979 amendment because the excusable neglect standard 'never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time.'").

## II.     RELEVANT FACTS

On March 11, 2026, the Court entered its "Findings of Fact and Conclusions of Law," [ECF 283] and "Judgment In A Civil Case". See ECF 284.

The 30-day deadline for GMM to file its Notice of Appeal is Friday, April 10, 2026, based upon the filing date of the FOF/COL and Judgment. See FRAP Rule 4(a)(1)(A) and Rule 26.

On April 2, 2026, Alfouadi's counsel contacted GMM's counsel Ryan M. Toyomura, and conveyed a preliminary settlement proposal to resolve all matters related to this case, including a potential appeal. See Dec. of Ryan M. Toyomura at ¶ 3.

On April 6, 2026, counsel for GMM and Alfouadi met again to discuss the settlement proposal. Given that the settlement discussion was moving in a positive direction, GMM's counsel proposed that GMM request an extension of time to file a notice of appeal to preserve its right to appeal the underlying orders and judgment, pending the outcome of the good-faith settlement discussions. See id. at ¶ 5.

This Motion followed.

## III. DISCUSSION

FRAP Rule 4(a)(5)(A) provides that this Court may grant an extension to file a notice of appeal for good cause. See Champion Int'l Corp., 680 F.2d 1300 at 1301. "Good cause comes into play 'in situations in which there is no fault—excusable or otherwise. In such situations, the need for an extension is usually

5091755.5                                    4

occasioned by something that is not within the control of the movant.'" Bishop v. Corsentino, 371 F.3d 1203, 1207 (10th Cir. 2004).

GMM was approached very recently with an offer of settlement to dispose of all matters related to the underlying case, including an appeal, on April 2, 2026. See Dec. of Ryan M. Toyomura at ¶ 3. At the conclusion of this meeting, GMM's counsel set a follow-up meet and confer for April 6, 2026, to conduct substantial discussions on the proposed settlement. Id. at ¶ 4.

At the April 6, 2026, meet and confer, counsel had substantive discussions on the settlement proposal and GMM presented additional settlement terms for Alfouadi's consideration. Based upon the progress of the negotiations, GMM's counsel proposed that GMM request an extension to file its notice of appeal, pending the outcome of the settlement negotiations, which would likely go beyond April 10, 2026. Id. at ¶ 5-6. Counsel also had substantial discussion about the purpose and timeline for the request for extension. Id.

First, the circumstances that led up to this Motion was not "within the control of the movant," as Alfouadi initiated settlement discussions on April 2, 2026. Corsentino, 371 F.3d at 1207. Since April 2, GMM worked diligently and quickly with opposing counsel to hold further settlement negotiations and discuss the need for an extension to file the Notice of Appeal.

5

Second, GMM's desire to continue settlement discussions is "good cause" for an extension of time.[2] Indeed, the Ninth Circuit has stated that "It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation." Ahern v. Cent. Pac. Freight Lines, 846 F.2d 47, 48 (9th Cir. 1988). In fact, there is "an overriding public interest in settling and quieting litigation." Id.

## IV. CONCLUSION

Based on the foregoing, GMM respectfully requests this Court to grant the Motion for an extension of time to file a Notice of Appeal pending the outcome of the settlement negotiations between the parties. GMM respectfully requests that this Court expedite its review of this Motion, given the April 10, 2026, deadline to file the Notice of Appeal.

DATED: Honolulu, Hawaii; April 8, 2026

/s/ Ryan M. Toyomura
KEVIN W. HERRING
RYAN M. TOYOMURA
Ashford & Wriston, LLLP

GLENN KATON

---

[2] The filing of a Notice of Appeal generally "divests a district court of jurisdiction over those aspects of the case involved in the appeal." Stein v. Wood, 127 F.3d 1187, 1189 (9th Cir. 1997). GMM believes that a settlement could be made more complicated if the Ninth Circuit obtained jurisdiction of this case and prefers that the Court retain jurisdiction pending the outcome of the settlement negotiations.

Katon.Law

Attorneys for Plaintiffs
GREEN MOUNTAIN MYCOSYSTEMS, LLC

7

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>RAIED J. ALFOUADI, et al.,<br><br>Defendants. | Case No.:  22-CV-00064 JAO KJM<br><br>**DECLARATION OF RYAN M. TOYOMURA** |

## <u>DECLARATION OF RYAN M. TOYOMURA</u>

I, RYAN M. TOYOMURA, declare as follows:

1.     I am an attorney with the law firm Ashford & Wriston, LLLP, duly licensed to practice law in the United States District Court, District of Hawaii, and am one of the attorneys for Plaintiff GREEN MOUNTAIN MYCOSYSTEMS, LLC ("GMM") in the above-entitled action.

2.     I make this Declaration based on personal knowledge, and I am competent to testify to the matters set forth herein.

3.     On April 2, 2026, counsel for Defendant RAIED J. ALFOUADI ("Alfouadi") contacted me via telephone to discuss a settlement proposal to potentially resolve all pending and future matters related to the above-entitled action, including any potential appeal.

4.     At the above meeting, I scheduled a follow-up conference on April 6, 2026, to discuss further discuss the settlement proposal.

5.     On April 6, 2026, counsel for GMM and Alfouadi attended a follow-up conference via video conference in which substantial settlement discussions were conducted.

6.     At the April 6, 2026 conference, GMM's counsel, Mr. Glenn Katon, suggested that GMM quickly request an extension for the time to file its Notice of Appeal pending the outcome of the settlement discussions that would likely go beyond the April 10, 2026, filing deadline for a Notice of Appeal. Counsel engaged in substantive discussion about the purpose and timing of a motion to request an extension of time including and whether all parties would stipulate to an extension of time in accordance with LR7.8.

7.     As of the time of filing of the Motion for an extension of time, Alfouadi's counsel has not stipulated to or otherwise agreed to an extension of time.

I declare under penalty of law that the foregoing is true to the best of my knowledge.

DATED:  Honolulu, Hawai'i; April 8, 2026

/s/ Ryan M. Toyomura
RYAN M. TOYOMURA

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DAVID DEMAREST AND GREEN ) CIVIL 1:22-cv-00064-JAO-KJM
MOUNTAIN MYCOSYSTEMS LLC ) (In Admiralty
                          )
          Plaintiffs,     ) CERTIFICATE OF SERVICE
                          )
   vs.                    )
                          )
RAIED J. ALFOUADI, ET. AL.,  )
                          )
          Defendants.     )

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing document was

made upon the parties below by the United States District Court for the District of

Hawaii's Case Management/Electronic Case Files ("CM/ECF") system:

JAMES V. MYHRE, ESQ.        jmyhre@mtmhawaiilaw.com
BRENT K. WILSON, ESQ.       bwilson@mtmhawaiilaw.com
Myhre & Storm
1003 Bishop Street, Suite 1290
Honolulu, Hawaii 96813
      Attorneys for Defendant
      RAIED J. ALFOUADI

DATED: Honolulu, Hawaii; April 8, 2026.

                              /s/ Ryan M. Toyomura
                              KEVIN W. HERRING
                              RYAN M. TOYOMURA
                              Ashford & Wriston, LLLP
                              GLENN KATON
                              Katon Law
                              Attorneys for Plaintiffs
                              GREEN MOUNTAIN MYCOSYSTEMS,
                              LLC

# EXHIBIT "B"

AO 450 (Rev. 1/25) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| GREEN MOUNTAIN MYCOSYSTEMS LLC, | JUDGMENT IN A CIVIL CASE |
| Plaintiff, | Case: 1:22-CV-00064-JAO-KJM |
| V. | |
| RAIED J. ALFOUADI, | |
| Defendant. | |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Mar 11, 2026, 1:30 pm**
LUCY H. CARRILLO, CLERK OF COURT

☐ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came for consideration before the Court. The issues have been considered, and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that judgment is entered pursuant to the "FINDINGS OF FACT AND CONCLUSIONS OF LAW", ECF No. 283. The Court finds against Plaintiff and in favor of Defendant on all claims.

| | |
|---|---|
| March 11, 2026 | LUCY H. CARRILLO |
| Date | Clerk |
| | /s/ LUCY H. CARRILLO by CB |
| | (By) Deputy Clerk |

EXHIBIT "B"

# EXHIBIT "D"

Of Counsel:
MYHRE & STORM

JAMES V. MYHRE          #5092-0
jmyhre@mtmhawaiilaw.com
BRENT K. WILSON        #10518-0
bwilson@mtmhawaiilaw.com
1003 Bishop Street, Suite 1290
Honolulu, Hawaii  96813
Telephone (808) 524-2466

Attorneys for Defendant
RAIED J. ALFOUADI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREEN MOUNTAIN MYCOSYSTEMS LLC,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>RAIED J. ALFOUADI,<br><br>                    Defendant. | ) CASE NO. 22-CV-00064-JAO-KJM<br>) (In Admiralty)<br>)<br>) DEFENDANT RAIED J.<br>) ALFOUADI'S OBJECTION TO<br>) PLAINTIFF'S MOTION FOR<br>) EXTENSION OF TIME TO FILE<br>) NOTICE OF APPEAL [ECF No. 288]<br>) FILED APRIL 8, 2026;<br>) DECLARATION OF BRENT K.<br>) WILSON; CERTIFICATE OF<br>) SERVICE<br>)<br>)<br>)<br>)<br>)<br>) Trial:    October 20, 2025<br>) Judge:  Honorable Jill A. Otake<br>)<br>) |

EXHIBIT "D"

### DEFENDANT RAIED J. ALFOUADI'S OBJECTION TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL [ECF No. 288] FILED APRIL 8, 2026

Defendant RAIED J. ALFOUADI ("Defendant"), respectfully objects to Plaintiff Green Mountain Mycosystems' ("GMM") Motion For Extension Of Time To File Notice Of Appeal [ECF No. 288], filed on April 8, 2026 ("Motion"). While Defendant agrees that from April 2, 2026 through April 6, 2026 the parties engaged in good faith efforts to resolve all matters related to this case, including GMM's potential appeal, it is Defendant's position that the parties have likely reached an impasse and that an additional thirty [30] days will probably not change that outcome.

On April 2, 2026, counsel for Defendant contacted counsel for GMM and proposed terms for a final post-trial resolution of this matter, including any potential appeal by GMM. Declaration of Brent K. Wilson ("Wilson Decl.") at ¶ 4. On April 6, 2026, GMM countered Defendant's original proposal with an additional term ("additional term"). *Id.* at ¶¶ 5-6. Defendant ultimately rejected the additional term. *Id.* at ¶¶ 7-8.

On April 8, 2026, counsel for Defendant advised GMM's counsel as to Defendant's position with respect to the additional term. *Id.* at ¶ 9. As of April 8, 2026, it is counsels' understanding that the parties remain diametrically opposed with respect to the additional term. *Id.* at ¶ 10. Thus, given the history of the parties

in this matter, Defendant contends that an additional thirty [30] days will not likely result in an agreeable settlement of this matter, and on that basis, objects to the instant Motion.

DATED:  Honolulu, Hawaii, April 9, 2026.

/s/ Brent K. Wilson
JAMES V. MYHRE
BRENT K. WILSON
Attorneys for Defendant
RAIED J. ALFOUADI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GREEN MOUNTAIN MYCOSYSTEMS LLC, | ) ) ) | CASE NO. 22-CV-00064-JAO-KJM (In Admiralty) |
| Plaintiffs, | ) ) ) | DECLARATION OF BRENT K. WILSON |
| vs. | ) ) | |
| RAIED J. ALFOUADI, | ) ) | |
| Defendant. | ) ) ) ) | |

**<u>DECLARATION OF BRENT K. WILSON</u>**

I, BRENT K. WILSON, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an attorney with the law firm Myhre & Storm, am duly licensed to practice law before all Courts in the State of Hawaii, and am one of the attorneys representing Defendant RAIED J. ALFOUADI ("Defendant") in the above-entitled matter.

2.      I make this Declaration based on my personal knowledge, unless otherwise indicated, and am competent to testify as to the facts set forth herein.

3.      From April 2, 2026 through April 6, 2026, the parties engaged in good faith efforts to resolve all matters related to this case, including GMM's potential appeal.

4.    On April 2, 2026, our office contacted counsel for GMM, Mr. Toyomura, and proposed terms for a final post-trial resolution of this matter, including any potential appeal by GMM.

5.    On April 6, 2026, the parties met and conferred via video conference, in accordance with LR 7.8 and 54.2, for the purpose of discussing the proposed terms, in addition to, Defendant's pending fee motion.

6.    At the April 6, 2026 conference of the parties, GMM countered Defendant's original proposal with an additional term.

7.    Following the April 6, 2026 conference of the parties, counsel for Defendant presented the additional term to Defendant.

8.    Defendant ultimately rejected the additional term.

9.    On April 8, 2026, counsel for Defendant advised GMM's counsel as to Defendant's position with respect to the additional term.

10.    As of April 8, 2026, it is counsels' understanding that the parties remain diametrically opposed with respect to the additional term.

11.    Given the history of the parties in this matter, it is Defendant's position that an additional thirty [30] days will not likely result in an agreeable settlement of this matter and Defendant objects to the instant Motion on that basis.

12.    Counsel for Defendant has no authority to stipulate or agree to GMM's proposed extension of the notice of appeal deadline.

13.    I, Brent K. Wilson, do declare that the foregoing is true and correct to the best of my personal knowledge and belief.

DATED:  Honolulu, Hawaii, April 9, 2026.

/s/ Brent K. Wilson
BRENT K. WILSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| RAIED J. ALFOUADI; UNNAMED SAILING VESSEL in rem, Hull No. HA 6874 H; DOE DEFENDANTS 1-20; DOE CORPORATIONS 1-20; DOE GOVERNMENT AGENCIES 1-20; DOE PARTNERSHIPS 1-20, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

CASE NO. 22-CV-00064-JAO-KJM
(In Admiralty)

CERTIFICATE OF SERVICE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

document was duly served upon the following parties via CM/ECF on April 9, 2026.

KEVIN W. HERRING, ESQ.
kherring@awlaw.com
RYAN M. TOYOMURA, ESQ.
rtoyomura@awlaw.com
First Hawaiian Center
999 Bishop Street, Suite 1400
Honolulu, Hawaii 96813

GLENN KATON, ESQ. (*Pro Hac Vice*)
385 Grand Ave. Suite 200
Oakland, CA 94610

Attorneys for Plaintiff
GREEN MOUNTAIN MYCOSYSTEMS

DATED:  Honolulu, Hawaii, April 9, 2026.

/s/ Brent K. Wilson
JAMES V. MYHRE
BRENT K. WILSON
Attorneys for Defendant
RAIED J. ALFOUADI

2

# EXHIBIT "E"

| From: | hid_resp@hid.uscourts.gov |
|---|---|
| Sent: | Thursday, April 09, 2026 12:01 PM |
| To: | hawaii_cmecf@hid.uscourts.gov |
| Subject: | Activity in Case 1:22-cv-00064-JAO-KJM Demarest et al v. Alfouadi et al Order on Motion for Extension of Time to File |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Hawaii

## Notice of Electronic Filing

The following transaction was entered on 4/9/2026 at 12:00 PM HST and filed on 4/9/2026

| **Case Name:** | Demarest et al v. Alfouadi et al |
|---|---|
| **Case Number:** | 1:22-cv-00064-JAO-KJM |
| **Filer:** | |

**WARNING: CASE CLOSED on 03/11/2026**

**Document Number:** 290(No document attached)

**Docket Text:**
**EO: For good cause shown, and over Defendant's objection, the Court GRANTS [288] Plaintiff's Motion for Extension of Time to File Notice of Appeal. The deadline to file a notice of appeal shall be continued from April 10, 2026, to May 11, 2026. The magistrate judge remains available to assist the parties with settlement discussions. IT IS SO ORDERED. Signed by MAGISTRATE JUDGE KENNETH J. MANSFIELD on 04/09/2026. (kjm3)**

**1:22-cv-00064-JAO-KJM Notice has been electronically mailed to:**

James V. Myhre    jmyhre@mtmhawaiilaw.com, kdilliner@mtmhawaiilaw.com,
office@mtmhawaiilaw.com

Kevin W. Herring    kherring@awlaw.com, balameida@awlaw.com

Brent Kahanaumaikai Wilson    bwilson@mtmhawaiilaw.com, kdilliner@mtmhawaiilaw.com,
office@mtmhawallaw.com

1    EXHIBIT "E"

Ryan Mitsuo Toyomura    rtoyomura@awlaw.com, tsasaki@awlaw.com

Glenn Katon    gkaton@katon.law, glennkaton@hotmail.com, glennkaton@recap.email

**1:22-cv-00064-JAO-KJM Notice will not be electronically mailed to:**

EXHIBIT "F"

| From: | hid_resp@hid.uscourts.gov |
|---|---|
| Sent: | Friday, April 10, 2026 3:02 PM |
| To: | hawaii_cmecf@hid.uscourts.gov |
| Subject: | Activity in Case 1:22-cv-00064-JAO-KJM Demarest et al v. Alfouadi et al Set Hearings |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

### District of Hawaii

## Notice of Electronic Filing

The following transaction was entered on 4/10/2026 at 3:02 PM HST and filed on 4/10/2026

**Case Name:** Demarest et al v. Alfouadi et al
**Case Number:** 1:22-cv-00064-JAO-KJM
**Filer:**
**WARNING: CASE CLOSED on 03/11/2026**
**Document Number:** 291(No document attached)

**Docket Text:**
**EO: Pursuant to the parties' request, the Court sets a settlement conference for 04/20/2026 at 11:00 a.m. via video conference before MAGISTRATE JUDGE KENNETH J. MANSFIELD. Brief letter updates, no more than five pages, are due by 12:00 p.m. on 04/16/2026. One double-sided hard copy of the letter from each party shall be delivered to the Clerk's Office followed by an electronic version to be emailed to mansfield_orders@hid.uscourts.gov.**

**The Courtroom Manager will send out a separate email providing counsel with the instructions and information to connect by video in advance of the conference. Participants must connect at least five minutes prior to the scheduled start time. (MAGISTRATE JUDGE KENNETH J. MANSFIELD) (kjm3)**

**1:22-cv-00064-JAO-KJM Notice has been electronically mailed to:**

James V. Myhre    jmyhre@mtmhawaiilaw.com, kdilliner@mtmhawaiilaw.com, office@mtmhawaiilaw.com

Kevin W. Herring    kherring@awlaw.com, balameida@awlaw.com

EXHIBIT "F"

Brent Kahanaumaikai Wilson    bwilson@mtmhawaiilaw.com, kdilliner@mtmhawaiilaw.com, office@mtmhawallaw.com

Ryan Mitsuo Toyomura    rtoyomura@awlaw.com, lsasaki@awlaw.com

Glenn Katon    gkaton@katon.law, glennkaton@hotmail.com, glennkaton@recap.email

**1:22-cv-00064-JAO-KJM Notice will not be electronically mailed to:**

# EXHIBIT "G"

# MINUTES

CASE NUMBER:     1:22-cv-00064-JAO-KJM

CASE NAME:     David Demarest, et al. v. Raied J. Alfouadi, et al.

ATTY FOR PLA:     Ryan Mitsuo Toyomura
Glenn Katon

ATTY FOR DEFT:     James V. Myhre
Brent Kahanaumaikai Wilson

---

JUDGE:     Kenneth J. Mansfield      REPORTER:     ZOOM - No Record

DATE:     04/20/2026      TIME:     11:00 am - 11:11 am

---

COURT ACTION:  EP:     CONFIDENTIAL SETTLEMENT CONFERENCE held on
04/20/2026.

David Demarest, client representative for Plaintiff Green Mountain Mycosystems, LLC, present.

Defendant Raied J. Alfouadi, present.

Jay Stahnke for State Farm, also present.

Settlement Discussion held with the parties.

No settlement reached. The parties remain at an impasse.

*Submitted by: Jodie Duarte, Courtroom Manager*

EXHIBIT "G"

# EXHIBIT "H"

ASHFORD & WRISTON
A Limited Liability Law Partnership LLP
KEVIN W. HERRING          6722-0
kherring@awlaw.com
RYAN M. TOYOMURA      11300-0
rtoyomura@awlaw.com
First Hawaiian Center
999 Bishop Street, Suite 1400
Honolulu, Hawaii  96813
Telephone:  (808) 539-0400

KATON.LAW
GLENN KATON
gkaton@katon.law
385 Grand Avenue, Suite 200
Oakland, California  94610
Telephone:  (510) 463-3350
Facsimile:  (510) 463-3349

ATTORNEYS FOR PLAINTIFF
    GREEN MOUNTAIN MYCOSYSTEMS, LLC

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DAVID DEMAREST and GREEN MOUNTAIN MYCOSYSTEMS LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>RAIED J. ALFOUADI, et al.,<br><br>Defendants. | Case No.:  1:22-CV-00064 JAO KJM<br><br>**NOTICE OF APPEAL;<br>EXHIBIT "A";<br>CERTIFICATE OF SERVICE** |

EXHIBIT "H"

5092445.1

## NOTICE OF APPEAL

Plaintiff GREEN MOUNTAIN MYCOSYSTEMS LLC hereby appeals to the United States Court of Appeals for the Ninth Circuit from the Final Judgment entered on March 11, 2026 [ECF No. 284].[1]  Attached hereto as Exhibit "A" are the Court's Form 1 – *Notice of Appeal from a Judgment or Order of a United States Court* and Form 6 – *Representation Statement*.

DATED:  Honolulu, Hawaii; May 11, 2026.

*/s/ Ryan M. Toyomura*
KEVIN W. HERRING
RYAN M. TOYOMURA
Ashford & Wriston, LLLP

GLENN KATON
Katon.Law

Attorneys for Plaintiffs
GREEN MOUNTAIN MYCOSYSTEMS, LLC

---

[1] The District Court granted an extension of time to file the Notice of Appeal to May 11, 2026. [ECF No. 290]

EXHIBIT "A"

# UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** HAWAII

## Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court

U.S. District Court case number: 1:22-cv-00064-JAO_KJM

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 02/14/2022

Date of judgment or order you are appealing: 03/11/2026

Docket entry number of judgment or order you are appealing: 284

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

⦿ Yes    ◯ No    ◯ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

GREEN MOUNTAIN MYCOSYSTEMS LLC

Is this a cross-appeal?  ◯ Yes    ⦿ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case?  ◯ Yes    ⦿ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City:                    State:        Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Ryan M. Toyomura    **Date** 05/11/2026

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 1**                                                      *Rev. 06/09/2022*

# EXHIBIT "A"

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*
Name(s) of party/parties:

| |
|---|
| GREEN MOUNTAIN MYCOSYSTEMS, LLC |

Name(s) of counsel (if any):

| |
|---|
| KEVIN W. HERRING / RYAN M. TOYOMURA, Ashford & Wriston LLLP<br>GLENN KATON, Katon Law |

Address:  see attached

Telephone number(s):  see attached

Email(s):  see attached

Is counsel registered for Electronic Filing in the 9th Circuit?  ⦿ Yes  ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*
Name(s) of party/parties:

| |
|---|
| RAIED J. ALFOUADI |

Name(s) of counsel (if any):

| |
|---|
| JAMES V. MYHRE / BRENT K. WILSON, Myhre & Storm |

Address:  1003 Bishop Street, Suite 1290

Telephone number(s):  (808) 524-2466

Email(s):  jmyhre@mtmhawaiilaw.com; bwilson@mtmhawaiilaw.com

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 6**                                    *1*                          *New 12/01/2018*

Attachment to Form 6.  Representation Sheet

**Appellants Counsel:**

KEVIN W. HERRING            6722-0
kherring@awlaw.com

RYAN M. TOYOMURA            11300-0
rtoyomura@awlaw.com

> ASHFORD & WRISTON
> A Limited Liability Law Partnership LLP
> First Hawaiian Center
> 999 Bishop Street, Suite 1400
> Honolulu, Hawaii  96813
> Telephone:  (808) 539-0400

GLENN KATON
gkaton@katon.law

> KATON.LAW
> 385 Grand Avenue, Suite 200
> Oakland, California  94610
> Telephone:  (510) 463-3350
> Facsimile:  (510) 463-3349

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID DEMAREST AND GREEN MOUNTAIN MYCOSYSTEMS LLC | ) ) ) | CIVIL 1:22-cv-00064-JAO-KJM |
| Plaintiffs, | ) ) | CERTIFICATE OF SERVICE |
| vs. | ) ) ) | |
| RAIED J. ALFOUADI, ET. AL., | ) ) | |
| Defendants. | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing document was

made upon the parties below by the United States District Court for the District of

Hawaii's Case Management/Electronic Case Files ("CM/ECF") system or by USPS

mail:

JAMES V. MYHRE, ESQ.     jmyhre@mtmhawaiilaw.com
BRENT K. WILSON, ESQ.    bwilson@mtmhawaiilaw.com
Myhre & Storm
1003 Bishop Street, Suite 1290
Honolulu, Hawaii 96813
    Attorneys for Defendant
    RAIED J. ALFOUADI

DATED: Honolulu, Hawaii; May 11, 2026.

/s/ Ryan M. Toyomura
KEVIN W. HERRING
RYAN M. TOYOMURA
Ashford & Wriston, LLLP

GLENN KATON
Katon.Law

5092445.1

Attorneys for Plaintiffs
GREEN MOUNTAIN MYCOSYSTEMS,
LLC

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 26-3128

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

JAMES V. MYHRE, ESQ.  jmyhre@mtmhawaiilaw.com
BRENT K. WILSON, ESQ.  bwilson@mtmhawaiilaw.com
Myhre & Storm
 Attorneys for Defendant-Appellee RAIED J. ALFOUADI

**Description of Document(s)** *(required for all documents)*:

PLAINTIFF/APPELLANT GREEN MOUNTAIN MYCOSYSTEMS, LLC'S
STATEMENT IN RESPONSE PURSUANT TO THE
COURT'S ORDER FILED ON JUNE 10, 2026

**Signature** | Ryan M. Toyomura       **Date** | July 1, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                          *Rev. 12/01/2018*