# EXHIBIT "L"

2011 WL 2518706
Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.

William E. NEWCOMB, also known as
Bill Newcomb, Plaintiff,
v.
CAMBRIDGE HOME LOANS, INC.;
Option One Mortgage Corporation, a
California Corporation; American Home
Mortgage Servicing, Inc.; Deutsche Bank
National Trust Company, Defendants.

CV. No. 09–00567 DAE–KSC.
|
June 23, 2011.

**Attorneys and Law Firms**

Terry G. Oppermann, Honolulu, HI, for Plaintiff.

Chanelle Mari Chung Fujimoto, Steven K.S. Chung, Steven Chung & Associates LLLC, Honolulu, HI, for Defendants.

*ORDER GRANTING PLAINTIFF'S MOTION TO SET ASIDE CLERK'S JUDGMENT IN A CIVIL CASE*

DAVID ALAN EZRA, District Judge.

**\*1** Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After careful review, the Court concludes that Plaintiff William E. Newcomb's ("Plaintiff") failure to timely file his amended complaint was the result of excusable neglect. Accordingly, the Court GRANTS Plaintiff's Motion to Set Aside Clerk's Judgment in a Civil Case. (Doc. # 25.)

*BACKGROUND*

In or around October 2005, Plaintiff William E. Newcomb, also known as Bill Newcomb, ("Plaintiff") procured a mortgage loan ("Loan") in the approximate amount of $800,000.00 from Defendant Cambridge Home Loans, Inc. ("Cambridge"), and/or its affiliates, for real property located at 77–107 Queen Kalama Avenue, Kailua–Kona, Hawaii. (Doc. # 1, Ex. A ¶ 2.) Plaintiff asserts that Cambridge thereafter sold or assigned the Loan to Defendant Option One Mortgage Corporation ("Option One") and/or the other Defendants. (*Id.* ¶ 3.)

On October 6, 2009, Plaintiff filed a Complaint in the Circuit Court of the Third Circuit, State of Hawaii, against Defendants Cambridge, Option One, American Home Mortgage Servicing, Inc. ("AHMS"), and Deutsche Bank National Trust Company ("Deutsche Bank") (collectively, "Defendants"). Plaintiff's Complaint asserted various state and federal causes of action in conjunction with the Loan. (*Id.* ¶¶ 8–18.) On November 30, 2009, Option One and AHMS removed the case to this Court. (Doc.# 1.)

On December 16, 2009, Option One, AHMS, and Deutsche Bank filed a Motion to Dismiss (Doc. # 6), which the Court granted on April 16, 2010 (Doc. # 21). Specifically, the Court dismissed with prejudice Plaintiff's TILA rescission claim, dismissed without prejudice Plaintiff's remaining claims, and directed Plaintiff to file an amended complaint on or before May 14, 2010.(*Id.*) Because Plaintiff failed to timely file an amended complaint, the Clerk of Court entered judgment in favor of Defendants on May 20, 2010. (Doc. # 23.)

On May 10, 2011, Plaintiff filed a Motion to Set Aside Clerk's Judgment in a Civil Case. ("Mot.," Doc. # 25.) Plaintiff argues that his attorney's death precluded him from timely filing an amended complaint and that he has therefore established excusable neglect pursuant to Federal Rules of Civil Procedure 60(b)(1) such that this Court should set aside the judgment. (*Id.*) On May 16, 2011, Option One, AHMS, and Deutsche Bank filed a Statement of No Position. (Doc. # 27.)

*DISCUSSION*

EXHIBIT "L"

**Newcomb v. Cambridge Home Loans, Inc., Not Reported in F.Supp.2d (2011)**

Following the liberal standard set by the Ninth Circuit, the Court concludes that Plaintiff has demonstrated excusable neglect. The Court therefore grants Plaintiff's motion and gives Plaintiff a reasonable extension of time to file an amended complaint.

Federal Rules of Civil Procedure 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: [ ] mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1).

**\*2** In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* the United States Supreme Court articulated a four-part test to determine whether a party has established excusable neglect. 507 U.S. 380, 395 (1993). Specifically, courts must examine: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *Id.* The determination of "what sorts of neglect will be considered 'excusable' ... is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395; *see also Lemoge v. United States,* 587 F.3d 1188, 1195 (9th Cir.2009) (stating that the four enumerated *Pioneer* factors are " 'not an exclusive list' ") (quoting *Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 381 (9th Cir.1997) (per curiam)).

The Ninth Circuit has expounded upon the *Pioneer* test and adopted it in other contexts, including Federal Rules of Civil Procedure ("Rule") 6(b) and 60(b) as well as Federal Rules of Appellate Procedure ("Appellate Rule") 4(a)(5).[1] *See, e.g., Briones,* 116 F.3d at 381 (adopting the *Pioneer* test for consideration of Rule 60(b) motions); *Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 825 n. 4 (9th Cir.1996) (concluding that the *Pioneer* test is applicable to Rule 6(b) and noting the Ninth Circuit's prior holding that the *Pioneer* analysis applies to Appellate Rule 4(a)(5)) (citing *Reynolds v. Wagner,* 55 F.3d 1426, 1429 (9th Cir.1995)). Although the Ninth Circuit initially took a narrow approach to the *Pioneer* excusable neglect analysis, *see Kyle v. Campbell Soup Co.,* 28 F.3d 928, 931–32 (9th Cir.1994) (concluding that an attorney's mistake in interpreting and applying unambiguous rules did not constitute excusable neglect under *Pioneer),* the clear trend since *Pincay v. Andrews,* 389 F.3d 853 (9th Cir.2004) (en banc) is to afford the movant more lenience when applying the *Pioneer* factors, *see, e.g., Lemoge,* 587 F.3d at 1195–98 (determining that the district court abused its discretion in not finding excusable neglect within Rule 60(b) when the plaintiffs'

attorney, due to serious medical issues, failed to timely serve the summons and complaint, but seven months later, moved to set aside the district court's dismissal of the case); *In re Zilog, Inc.,* 450 F.3d 996, 1006–07 (9th Cir.2006) (concluding that the bankruptcy court abused its discretion in failing to find excusable neglect pursuant to Bankruptcy Rule 9006(b)(1) when pro se employees failed to timely file proofs of claim); *Pincay,* 389 F.3d at 858–60 (affirming the district court's finding of excusable neglect within the meaning of Appellate Rule 4(a)(5) when the defendants filed their notice of appeal twenty-four days late due to a calendaring mistake caused by attorneys and paralegals misapplying a clear legal rule). Indeed, the Ninth Circuit has recently reiterated that "[e]xcusable neglect 'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness.' " *Lemoge,* 587 F.3d at 1192 (quoting *Pioneer,* 507 U.S. at 394).

I. *Prejudice*

**\*3** The first *Pioneer* factor, prejudice to the opposing party, "requires greater harm than simply that relief would delay resolution of the case." *Lemoge,* 587 F.3d at 1196 (citing *TCI Grp. Life Ins. Plan v. Knoebber,* 244 F.3d 691, 701 (9th Cir.2001)); *see also Bateman v. U.S. Postal Serv.,* 231 F.3d 1220, 1224–25 (9th Cir.2000) (concluding that the loss of a "quick victory" is insufficient prejudice to deny relief under Rule 60(b)). Prejudice to the movant, although not an explicit *Pioneer* factor, can also be considered in appropriate circumstances. *Lemoge,* 587 F.3d at 1195; *see also S.E.C. v. Platforms Wireless Int'l Corp.,* 617 F.3d 1072, 1100 (9th Cir.2010) (citing *Lemoge,* 587 F.3d at 1195).

Here, Defendants have not identified any prejudice they would suffer from setting aside the judgment, and upon review of the information presented, the Court concludes that the prejudice to Defendants is nominal. Reopening Plaintiff's lawsuit would merely mean that Defendants "would have lost a quick victory," which is not sufficiently prejudicial to deny relief. *See Bateman,* 231 F.3d at 1225; *see also Lemoge,* 587 F.3d at 1196 (rejecting the defendant's assertion that it would be prejudiced if the plaintiffs' Rule 60(b) motion were granted because it relied on the dismissal of the lawsuit in settling a separate action). Accordingly, this factor weighs in favor of Plaintiff.[2]

Newcomb v. Cambridge Home Loans, Inc., Not Reported in F.Supp.2d (2011)

II. *Length of the Delay*

As to the second factor, the length of the delay, Rule 60(c) requires that a Rule 60(b) motion be made "within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed.R.Civ.P. 60(c). " 'What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Lemoge,* 587 F.3d at 1196–97 (quoting *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir.1981) (per curiam)).

Here, James Ireijo, Esq., was counsel of record when the Court issued the April 16, 2010 Order, which granted the Motion to Dismiss and directed Plaintiff to file an amended complaint on or before May 14, 2010. Plaintiff attests that he last spoke with Mr. Ireijo in March 2010, and that, during this conversation, Mr. Ireijo informed him that there was an upcoming court date. (Mot., Declaration of William E. Newcomb ("Newcomb Decl.") ¶¶ 2, 5.) Plaintiff states that he never received notice that this action had been dismissed, and when he had not heard from Mr. Ireijo by July 2010, he sent Mr. Ireijo an e-mail, which was returned as undeliverable. (*Id.* ¶¶ 5–6.) Plaintiff represents that he subsequently found Mr. Ireijo's obituary online, which indicated that Mr. Ireijo passed away on April 21, 2010, five days after the Court issued the April 16, 2010 Order. (*Id.* ¶ 8.) According to Plaintiff, he then contacted Mr. Ireijo's family members to find out what had happened to Mr. Ireijo's legal files. (*Id.* ¶¶ 9–12.) On September 1, 2010, Plaintiff retained Terry G. Oppermann, Esq., to represent him in this matter. (*Id.* ¶¶ 14–16; Mot., Declaration of Terry G. Oppermann ("Oppermann Decl.") ¶ 6.)

**\*4** Mr. Oppermann filed the instant Rule 60(b) motion on May 10, 2011, and he attributes the eight-month delay to "gathering and reviewing court records, reviewing records supplied by [Plaintiff], communicating with [Plaintiff] and researching the applicable law and waiting for [Plaintiff] to receive the informational copy of the Death Certificate." (Oppermann Decl. ¶¶ 7, 10, 15–16.) Mr. Oppermann also attests that he was out of the country for significant periods of time during these eight months "gathering and presenting documentation to process visa papers for [his] daughter and her mother to come to Hawaii ... as well as addressing pending legal and business matters concerning the Philippine law firm Evasco Chan & Abinales[ ] to whom [Mr. Oppermann] is 'Of Counsel.' " (*Id.* ¶¶ 8–9, 11, 14.) According to Mr. Oppermann, he was also unable to work from late January 2011 to the end of February 2011 due to a "number of medical ailments." (*Id.* ¶ 12.)

The combined delay, which encompasses the time it took Plaintiff to learn of Mr. Ireijo's death and find a new lawyer, as well as the time it took Mr. Oppermann to file the Rule 60(b) motion, is just under one year. Admittedly, it was not unreasonable for Plaintiff to wait until July 2010 to e-mail Mr. Ireijo. Mr. Ireijo assured Plaintiff that the April 2010 hearing on the Motion to Dismiss was nothing to worry about,[3] and Plaintiff represents that he never received notice from either the Court or Mr. Ireijo that the Complaint had been dismissed. (Newcomb Decl. ¶ 5.) Moreover, when Plaintiff's e-mail to Mr. Ireijo was returned as undeliverable, Plaintiff was diligent in his attempts to contact Mr. Ireijo's family and his efforts to retain a new lawyer. The length of the delay attributable to Plaintiff was therefore reasonable.

Mr. Oppermann's eight-month delay in filing the instant motion is not as easy to justify. Although Mr. Oppermann required a period of time to review Plaintiff's case file and obtain the necessary records, the eight months that it took Mr. Oppermann to prepare the instant motion appears to be excessive. The Court is mindful, however, that Mr. Oppermann's delay can be attributed, at least in part, to his other personal and professional commitments, as well as his lengthy illness in the beginning of 2011. Due to the extreme circumstances surrounding Plaintiff's retention of Mr. Oppermann, the Court cannot conclude that the combined delay of just under one year is unreasonable, particularly in light of other delays that the Ninth Circuit has deemed reasonable. *See, e.g., Lemoge,* 587 F.3d at 1197 (concluding that the plaintiffs' Rule 60(b) motion, filed seven months after the case had been dismissed, was brought within a reasonable amount of time); *Bateman,* 231 F.3d at 1225 (characterizing the plaintiff's month-long delay in filing its Rule 60(b) motion as "minimal"). Accordingly, this factor does not weigh in favor of either party.

III. *Reason for the Delay*

**\*5** The Supreme Court has made clear that "excusable neglect ... is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer,* 507 U.S. at 391. On several occasions, the Ninth Circuit has found excusable neglect for delays caused by the negligence and carelessness of experienced law firms and attorneys. *See, e.g., Ahanchian v. Xenon Pictures, Inc.,* 624 F.3d 1253, 1262 (9th Cir.2010) (characterizing an attorney's "calendaring mistake caused by the failure to apply a clear local rule" as a weak justification for the delay, but nonetheless finding

**Newcomb v. Cambridge Home Loans, Inc., Not Reported in F.Supp.2d (2011)**

excusable neglect); *Lemoge,* 587 F.3d at 1197 (finding that although the plaintiffs' attorney was "seriously" negligent in failing to identify the correct agency to serve, his medical problems, which began shortly thereafter and precluded him from correcting the situation, "provided adequate reasons for the delay"); *Pincay,* 389 F.3d at 859 (recognizing that "a lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered," but nevertheless holding that the district court did not abuse its discretion by finding excusable neglect when a sophisticated law firm missed a filing deadline because of a paralegal's error); *Bateman,* 231 F.3d at 1222–25 (finding excusable neglect when an attorney missed an opposition deadline while he was out of the country for a family emergency, but the attorney did not contact the district court until sixteen days after he returned, attributing his lapse to "jet lag and the time it took to sort through the mail"). Indeed, in *Pioneer* itself, the U.S. Supreme Court found excusable neglect when "an experienced bankruptcy attorney" missed the deadline for filing pre-petition claims because he overlooked the filing date in the bankruptcy court's notice. *Pioneer,* 507 U.S. at 383–84, 398. Although the Supreme Court "consider[ed] significant" that the bankruptcy court's notice of the bar date was outside the ordinary course in bankruptcy cases, it nonetheless clarified that even an attorney's neglect can be considered excusable. *Id.* at 398.

Here, to the extent that the delay is premised upon Mr. Ireijo's death and the time it took Plaintiff to retain a new lawyer, these circumstances were largely beyond Plaintiff's control, and the delay is thus justifiable. Although the reasons for Mr. Oppermann's delay are less compelling, Mr. Oppermann did not miss the deadline for filing the Rule 60(b) motion, and he was no more careless in this case than were the attorneys in *Pioneer, Ahanchian, Lemoge, Pincay,* and *Bateman.* Accordingly, under the circumstances presented, this will not preclude the Court from finding excusable neglect.

IV. *Good Faith*

As to the final factor, the Court cannot conclude that Plaintiff acted in bad faith. Although Mr. Oppermann arguably should not have taken eight months to file the instant motion, this does not constitute bad faith. *See Bateman,* 231 F.3d at 1225 (concluding that the movant acted in good faith because "[h]is errors resulted from

negligence and carelessness, not from deviousness or willfulness"). Moreover, Plaintiff acted in good faith by attempting to retain a new attorney shortly after he learned of Mr. Ireijo's death. Accordingly, this factor weighs in favor of Plaintiff.

**\*6** In sum, two of the *Pioneer* factors—prejudice and good faith—weigh in favor of Plaintiff, and although Mr. Oppermann's eight-month delay in filing the instant motion was likely excessive, under the circumstances presented here, this lapse will not preclude the Court from finding excusable neglect. *See Pioneer,* 507 U.S. at 388 ("Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."). Thus, "considering all relevant circumstances," *id.* at 395, the Court concludes that Plaintiff has demonstrated excusable neglect within the meaning of Rule 60(b)(1).

Moreover, in accordance with Plaintiff's request (Oppermann Decl. ¶¶ 19–20), the Court grants Plaintiff 60 days from the date of this Order to file an amended complaint consistent with the April 16, 2010 Order. The amended complaint must clearly state how each of the named defendants have injured Plaintiff, and it must also clearly identify the statutory provisions, if any, under which Plaintiff's claims are brought. The Court expects full and complete compliance with its orders going forward and cautions Plaintiff that no further extensions of time will be granted.

CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's Motion to Set Aside Clerk's Judgment in a Civil Case. (Doc. # 25.)

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2518706

Footnotes

**Newcomb v. Cambridge Home Loans, Inc., Not Reported in F.Supp.2d (2011)**

1        The Supreme Court established the *Pioneer* test for purposes of Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 9006(b)(1). *See Pioneer,* 507 U.S. at 382–83.

2        As in *Lemoge,* it may be appropriate in this case to consider the prejudice to Plaintiff if he is denied relief. *See Lemoge,* 587 F.3d at 1194–95 (concluding that although prejudice to the movant is not an enumerated *Pioneer* factor, it is a "relevant circumstance" to be considered in certain cases) (citing *Pioneer,* 507 U.S. at 395). Because the Court already concludes that Defendants will not suffer sufficient prejudice to deny relief, it does not consider the prejudice to Plaintiff as an additional, relevant circumstance.

3        The Court ultimately vacated the hearing on the Motion to Dismiss and decided the motion on the papers without a hearing. (Doc. # 20.)

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---